### Kreigh HAWK and Kevin Coleman, Plaintiffs,

v.

### Louis PERILLO; Michael Timothy; James Timothy; Officer Richard Wagner; Officer Edward Lenti; Carms Restaurant; John Does 1–10, Defendants.

### No. 85 C 3380.

United States District Court, N.D. Illinois, E.D.

Oct. 31, 1985.

On Carms' Motion to Dismiss April 14, 1986.

On Timothy's Motion to Dismiss April 14, 1986.

Abraham N. Goldman, Abraham N. Goldman & Assoc., Ltd., Terri L. VanZandt, John R. Wylie, Chicago, Ill., for plaintiffs.

William S. Wigoda and John E. Munger, Conklin & Adler, Ltd., Chicago, Ill., for Michael Timothy, James Timothy and Carms Restaurant.

Robert J. Dargis, James D. Montgomery, City of Chicago, Corp. Counsel, Chicago, Ill., for Officers Wagner and Lenti.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The complaint filed herein arises out of a violent conspiratorial attack that a group of white males allegedly perpetrated against plaintiffs on June 25, 1983. In addition to charging the individual assailants with civil rights violations, the complaint charges also that two Chicago police officers, by their post attack inaction, violated plaintiffs' civil rights under the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983 and 1985(2) and (3). This action is presently before the court on a motion to dismiss filed by the two police officers. For the reasons set forth in this memorandum opinion, the motion to dismiss is granted in part and denied in part.

### I

In the early evening of June 25, 1983, plaintiffs Kreigh Hawk ("Hawk") and Kevin Coleman ("Coleman"), both of whom are black males, together with a third individual, Michael Hurley,[1] had just departed from a Chicago restaurant when they encountered a group of approximately twelve white males. The group of white males yelled racial slurs and threats of physical violence at plaintiffs. Coleman returned to the restaurant to telephone the police. Hawk and Hurley remained outside where they were attacked and severely beaten by the group of white males. Throughout the attack, the group of white males continued to yell racial insults at Hawk and Hurley.

After the beating had ceased, Edward Lenti and Richard Wagner ("Police Defendants"), two Chicago Police officers, arrived at the scene of the attack and interviewed Hawk and Hurley. Hawk and Hurley pro-

---

1. Michael Hurley has not joined in plaintiffs' complaint.

vided detailed descriptions of two of the assailants, which prompted the Police Defendants to state that they were familiar with the group that had perpetrated the attack. The Police Defendants then described two other individuals who Hawk indicated took part in the attack.

During this discussion, three participants in the attack were standing on the sidewalk nearby. Hawk and Hurley identified the three men to the Police Defendants who then approached the three men. One of Police Defendants, leaning close to the men, held a conversation with them. After this conversation, two of the men fled. The Police Defendants failed to order the fleeing men to halt. Further, the Police Defendants did not pursue the fleeing men until after they had run into an alley. The Police Defendants then gave chase, running up the alley, only to return shortly thereafter. They explained that they had lost the fleeing men. After returning from the chase, the Police Defendants did not interview anyone at the scene of the attack.

Plaintiffs allege also that the Police Defendants knew at least some of the attackers prior to the attack. They allegedly knew that the attackers had been involved in similar attacks in the past and that the attackers belonged to a club or gang which was motivated by racial animus.

## II

The Police Defendants argue initially that plaintiffs have failed to state a claim under 42 U.S.C. § 1983.[2] A cause of action under Section 1983 has two elements: (1) that the defendants acted under color of state law, and (2) that defendants' actions deprived the plaintiff of a constitutional right, privilege or immunity. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The Police

Defendants do not contest that they were acting under color of state law. Rather, the Police Defendants assert that the acts alleged in the complaint cannot, as a matter of law, constitute a deprivation of a constitutional right.

 The Police Defendants characterize plaintiffs' Section 1983 claim as asserting a constitutional right to police protection. They contend, citing several cases in support, that the constitution does not impose any duty on police to intervene or investigate a crime. In *Beard v. O'Neal,* 728 F.2d 894 (7th Cir.1984), *cert. denied* 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984), the court found that an FBI informant, who had accompanied a Chicago police officer on the night the officer performed a murder contract, did not have a constitutional duty to prevent the murder. *Id.* at 899. In *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984), a police officer failed either to aid the occupants of a burning car or to call an ambulance. The fire department failed to discover the car was occupied before extinguishing the fire. The court held that there is no constitutional right to competent rescue services. *Id.* at 1203. In *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982), the court held that the state does not have a constitutional duty to protect citizens from the violent acts of released mental patients. *Id.* at 618–19. Similarly, in *Fox v. Custis,* 712 F.2d 84 (4th Cir.1983), the court held that the constitution does not impose a duty on the state to protect citizens from the violent acts of a parolee. *Id.* at 88. Finally, the Police Defendants cite *Simack v. Risley,* No. 84 C 8689, slip op. (N.D.Ill. April 12, 1985) [Available on WESTLAW, DCTU database], in which the police stood by and watched while the

---

**2.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

plaintiff was beaten and robbed by three men. The court dismissed the complaint, stating that, "lack of affirmative action by police officers when a private citizen's life or property is in jeopardy is not a constitutional violation." *Id.* at 2. These cases, while instructive, are not determinative of the issue here. All of these cases deal with state actors failing to prevent or intervene in situations where a citizen's life is in danger. The complaint here does not rest on such allegations. Indeed, as the complaint clearly states, the Police Defendants did not arrive on the scene until after the attack occurred.

Contrary to the Police Defendants analysis, this court interprets plaintiffs complaint as alleging that the Police Defendants failed to act because plaintiffs are black. These allegations state a claim under Section 1983 for violations of the plaintiffs' Fourteenth Amendment right to equal protection. As stated by the Court in *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983), *cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984), "[i]f the defendants had withheld protection from the plaintiffs' decedents because they were blacks ... there would be an equal protection issue." *Id.* at 1203. *See also Smith v. Ross*, 482 F.2d 33 (6th Cir.1973).

Further, if plaintiffs' allegations are true, and they are of course taken as true for purposes of this motion to dismiss, then the Police Defendants actions are precisely the type of actions that motivated Congress to pass Section 1983. In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court reviewed the legislative history of Section 1983. As the Court stated, "[i]t was not the unavailability of state remedies but the failure of certain States to enforce the laws with an equal hand that furnished the powerful momentum behind this 'force bill'." *Id.* at 174–75, 81 S.Ct. at 477. The Court summa-

rized its reading of the legislative history, stating "[w]hile one main scourge of the evil—perhaps the leading one—was the Ku Klux Klan, the remedy created was not a remedy against it or its members but against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law." *Id.* at 175–76, 81 S.Ct. at 477–78 (emphasis in original).

■ Turning to the plaintiffs' Section 1983 claim for violations of the Thirteenth Amendment, the Police Defendants argue that their actions "can hardly be read" to amount to slavery or involuntary servitude. The Thirteenth Amendment not only prohibits slavery and involuntary servitude, but also gives Congress the power to prohibit actions that impose a "badge of slavery" on citizens. *James v. Alfred H. Mayer Co.*, 392 U.S. 409, 439–43, 88 S.Ct. 2186, 2203–05, 20 L.Ed.2d 1189 (1968). *But see City of Memphis v. Greene*, 451 U.S. 100, 126 n. 40, 101 S.Ct. 1584, 1599 n. 40, 67 L.Ed.2d 769 (1981). However, in the realm of equal protection, the Thirteenth Amendment offers no protection not already provided under the Fourteenth Amendment. *Cf. Washington v. Finlay*, 664 F.2d 913, 927 (4th Cir.1981), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1333 (1982) (voting rights under Thirteenth, Fourteenth and Fifteenth Amendments). Consequently, plaintiffs' claims under Section 1983 for violations of their Thirteenth Amendment rights will be dismissed.

■ The Police Defendants argue next that plaintiffs have failed to state a claim under 42 U.S.C. § 1981.[3] A claim under Section 1981, as plaintiffs and the Police Defendants agree, requires allegations of a racially discriminatory intent or animus. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir.1984). As the Police Defendants correctly point out, plaintiffs must allege at least some facts that show that

---

**3.** 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

their race was the *reason* for the Police Defendants' inaction. *See Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982).

After closely reviewing the pleadings, this court finds that plaintiffs have alleged sufficient facts to show that plaintiffs' race was the motivating force behind the Police Defendants' inaction. In particular, the court notes that the Police Defendants obviously knew that plaintiffs were black and that plaintiffs were the victims of a vicious attack at the hands of a group of white males. Plaintiffs allege that the Police Defendants knew certain individuals who perpetrated the attack, knew they belonged to racially motivated gang and knew they had previously engaged in similar attacks. The Police Defendants, however, failed to apprehend the attackers and even allegedly allowed two attackers to escape. The reasonable inference is that racial animus was the reason for the Police Defendants' inaction.

■ The Police Defendants assert also that plaintiffs have failed to state a claim for conspiracy under 42 U.S.C. § 1985.[4] The Police Defendants argue that plaintiffs charge of conspiracy is supported only by conclusory allegations without factual support. This court cannot agree. The facts recited in the preceding section support an allegation of conspiracy. In addition, plaintiffs' allege that one of the Police Defendants held a "private" conversation with several individuals identified as participating in the attack. Shortly after this conversation, two attackers fled with the Police Defendants giving only belated and futile pursuit. Plaintiffs have pleaded enough facts to make out a claim for conspiracy under Section 1985.

■ Finally, the Police Defendants assert that plaintiffs have failed to make out a claim under Illinois common law. Plaintiffs do not identify in their complaint what common law theory they are pursuing. However, in their brief, plaintiffs indicate that their common law theory of liability is obstruction of justice. Under Illinois law, obstruction of justice is a crime. *See* ILL. REV.STAT. ch. 38, §§ 31–1 *et seq.* (1973). This court, however, has not found any case in which a private plaintiff was found to state a civil claim for obstruction of justice. *Cf. John Allan Co. v. Brandow,*

**4.** 42 U.S.C. § 1985 provides in pertinent part: (2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;
(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this action, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right of privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

59 Ill.App.2d 328, 207 N.E.2d 339 (1965) (civil actions for perjury against public policy). Plaintiffs common law claim is consequently dismissed.

For the reasons set forth previously in this opinion, it is hereby ordered that the motion to dismiss filed by defendants Edward Lenti and Richard Wagner is granted with respect to plaintiffs' claims for violations of the Thirteenth Amendment and Illinois common law. In all other respects, the motion to dismiss is denied.

## ON CARMS' MOTION TO DISMISS

Plaintiffs, Kreigh Hawk ("Hawk") and Kevin Coleman ("Coleman") have filed suit against the defendant, Carms Snack Shop [1] ("Carms"), alleging that Carms deprived plaintiffs of their civil rights in violation of 42 U.S.C. §§ 1981 and 1985(3). This action is presently before the court on Carms' motion to dismiss. For the reasons set forth in this opinion and order, Carms' motion is denied.

### I

In the early evening of June 25, 1983, Hawk and Coleman, both of whom are black males, and their cousin, Michael Hurley ("Hurley"), who has not joined in this action, had just left Carms when they were accosted by a group of approximately twelve white males. The group of white males yelled racial slurs and threatened plaintiffs and Hurley with physical violence. Coleman returned to Carms to telephone the police. As he reached Carms, Hawk and Hurley were attacked and severely beaten by the group of white males.

Throughout the attack, the white males yelled racial epithets at Hawk and Hurley.

Coleman telephoned the police and then, in fear of the attackers, locked himself in the men's restroom. Shortly thereafter, a man, identified in the complaint as John Doe # 10 ("Doe"),[2] knocked on the restroom door and stated that he was the owner of the restaurant. Doe stated that he had seen the attack and knew the attackers. Doe stated also that he sympathized with "you people." Doe then told Coleman that Hawk and Hurley had been taken to an apartment in the building next door where they were receiving first aid. Doe informed Coleman that he would have to leave the restaurant and that he should leave by the back entrance. Following Doe's instructions, Coleman left Carms through the back door. When he reached the apartment where Hawk and Hurley were ostensibly receiving first aid, however, no one was there. Plaintiffs allege that Doe intentionally gave him false information to induce him to leave the restaurant and expose him to attack. Plaintiffs contend that these actions constitute a conspiracy between Carms, Doe, and the attackers in violation of 42 U.S.C. §§ 1981 and 1985(3).[3]

■ In response to the allegation that it has engaged in a conspiracy in violation of Section 1981,[4] Carms argues that Section 1981 requires state action. This court need not set out the specifics of Carms' argument because that argument rests on a faulty premise. This court has already ruled that Section 1981 does not require

---

1. Plaintiffs refer to Carms as Carms Restaurant. Defendant refers to it as Carms Snack Shop. The court will accept Carms version of its own name.

2. This defendant is identified in the statement of facts as John Doe # 10 and in Count III as John Doe # 9. Having reviewed the complaint, the court is convinced that plaintiffs intended this defendant to be John Doe # 10.

3. In their complaint, plaintiffs state that the statutes violated were 28 U.S.C. §§ 1981 and 1985(3). Obviously, plaintiffs intended to plead a violation of Title 42 and not Title 28.

4. 42 U.S.C. § 1981 provides:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

state involvement. *See Hawk v. Perillo*, No. 85 C 3380 (N.D.Ill. March 31, 1986). The court is not convinced that is should change its earlier ruling. Consequently, Carms' motion to dismiss plaintiffs' claim for relief under Section 1981 is denied.

Carms also argues that plaintiffs have failed to state a claim under Section 1985(3).[5] To make out a valid cause of action under Section 1985(3), a plaintiff must allege five elements: (1) a conspiracy; (2) motivated by a racial or class-based invidious discriminatory animus; (3) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; (4) an act in furtherance of the conspiracy; and (5) an injury to the plaintiff's person or property or a deprivation of any right or privilege of a citizen of the United States. *Stevens v. Tillman*, 568 F.Supp. 289, 292 (N.D.Ill.1983). *But cf. Quinones v. Szorc*, 771 F.2d 289, 291 n. 1 (7th Cir. 1985) (four elements). Carms asserts that plaintiffs have failed to allege facts sufficient to plead either a conspiracy or that plaintiffs were deprived of a federally protected right.

■ Carms argues that plaintiffs have not pled a conspiracy because plaintiffs have failed to set forth facts sufficient to show a common plan between Carms and the other alleged conspirators. A reading of the complaint leads to the opposite conclusion. Plaintiffs allege that Doe[6] knew of the attack and knew that Coleman had been with Hawk and Hurley just before the attack. With these facts in mind, Doe lied to Coleman to induce him to leave his haven and thereby subject him to attack. Doe, thus, joined in the common purpose of the attackers of causing physical harm to plaintiffs and intimidating them. That Coleman was not caused any actual physical harm is irrelevant. Once Carms, through Doe, joined the conspiracy, it became a party to every act previously or subsequently performed by any of the other conspirators. *See, e.g., Beltz Travel Service, Inc. v. International Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).

■ Carms other contention is equally unpersuasive. Plaintiffs assert that the conspirators, including Carms, sought to intimidate plaintiffs "from the free use of highways and entering the subject neighborhood." Plaintiffs complaint clearly raises, at the very least, the right of interstate travel, which is a constitutionally protected right. *See, e.g., Griffin v. Breckenridge*, 403 U.S. 88, 105–06, 91 S.Ct. 1790, 1799–1800, 29 L.Ed.2d 338 (1971); *United States v. Guest*, 383 U.S. 745, 757–59, 86 S.Ct. 1170, 1177–78, 16 L.Ed.2d 239 (1966). Plaintiffs have stated a claim under Section 1985(3).

For the foregoing reasons, it is hereby ordered that Carms' motion to dismiss is denied.

---

**5.** 42 U.S. § 1985(3) provides:

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this action, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**6.** The court's analysis rests on the assumption that Doe, as he proclaimed himself to be, is the owner of Carms.

## ON TIMOTHY'S MOTION TO DISMISS

This civil rights action arises out of a violent conspiratorial attack that a group of white males allegedly perpetrated against plaintiffs. Defendant, Michael Timothy ("Timothy"), one of the alleged attackers, has moved to dismiss Counts I, II and IV of plaintiffs' complaint. Timothy's motion to dismiss is granted in part and denied in part.

### I

On June 25, 1983, plaintiffs Kreigh Hawk ("Hawk") and Kevin Coleman ("Coleman"), both of whom are black males, and a third individual, Michael Hurley ("Hurley"), who has not joined in this action, left a Chicago restaurant and walked to their car, only to find that the tires had been slashed. A group of approximately twelve white males, who were standing nearby, began to yell racial epithets and threats of physical violence at plaintiffs and Hurley. Coleman returned to the restaurant to telephone the police. Hawk and Hurley remained outside where they were attacked and beaten by the group of white males. Hawk suffered a broken jaw when the attackers dragged him into the street and slammed his head onto the pavement. The attackers threatened to kill Hawk and Hurley and yelled racial insults throughout the attack. According to the complaint, Timothy was a participant in the attack.

After the attack had ceased, two Chicago police officers ("Police Defendants") arrived and interviewed Hawk and Hurley. Based on descriptions given by Hawk and Hurley, the Police Defendants stated that they were familiar with the perpetrators of the attack. The Police Defendants then described two other individuals and asked Hawk if he recognized them. Hawk stated the individuals described by the Police Defendants had participated in the attack. While the Police Defendants were interviewing Hawk and Hurley, three of the attackers were standing on a nearby sidewalk. Hawk and Hurley identified the three men as part of the group that had engaged in the attack. The Police Defend-

ants then approached the three men. One of the Police Defendants, leaning close to two of the men, held a conversation with them. Hawk was unable to hear what was said during that conversation. Shortly after the conversation ceased, however, two of the men fled. The Police Defendants did not order the fleeing men to halt. Further, the Police Defendants only pursued the fleeing men after they ran into an alley. The Police Defendants then gave chase, running into the alley. The Police Defendants returned soon thereafter and explained that they had lost the two fleeing men.

According to plaintiffs, the Police Defendants did not question any potential witnesses at the scene of the attack. Further, the Police Defendants knew at least several, if not all, of the attackers prior to the attack. They knew that the attackers all belonged to a gang or club that was motivated by racial animus. They knew also that the perpetrators of the attack on Hawk and Hurley had engaged in similar attacks in the past.

### II

Plaintiffs have filed a four count complaint, only three counts of which name Timothy as a defendant. As stated previously, Timothy has moved to dismiss those three counts. The court will discuss each of Timothy's arguments in turn.

■ In Count I of their complaint, plaintiffs allege that their attackers, including Timothy, violated, and conspired to violate, plaintiffs' civil rights under the Thirteenth Amendment and 42 U.S.C. § 1981. Timothy argues first that there is no separate cause of action for a breach of the Thirteenth Amendment. A claim under the Thirteenth Amendment, Timothy argues, may only be brought under one of the implementing statutes such as the Civil Rights Act of 1866. Timothy is correct. *See, e.g., Clark v. Universal Builders, Inc.,* 409 F.Supp. 1274, 1279 (N.D.Ill.1976). The court cannot determine from its reading of the complaint whether plaintiffs in-

tended to assert a separate cause of action under the Thirteenth Amendment. To the extent that plaintiffs have attempted to assert such a claim, however, that claim will be dismissed.

As to plaintiffs' claim that Timothy violated 42 U.S.C. § 1981,[1] Timothy argues that to state a claim under that statute, plaintiffs must allege state action. Timothy contends that plaintiffs allegation that he worked for the City of Chicago Fire Department is conclusory and, without more, insufficient to allege state action. Failing to allege state action, Timothy concludes, Count I of plaintiffs' complaint must be dismissed.

Timothy's argument rests on the assertion that Section 1981 requires state action. In support of the proposition, no court in the Seventh Circuit having addressed the issue, Timothy relies on *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir.1977) *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).[2] In *Mahone*, plaintiffs, two black males, brought suit under Section 1981, claiming that the City of Pittsburgh was liable on a *respondeat superior* basis for the misconduct of two of its police officers. The lower court dismissed plaintiffs' Section 1981 claim, finding that the conduct alleged in the complaint did not fall within the ambit of that Section.

The Third Circuit Court of Appeals reversed, finding that the conduct complained of was within the scope of activities Section 1981 was designed to prevent. In reaching that conclusion, the Third Circuit also discussed whether state action is a necessary element of a Section 1981 cause of action. The court divided Section 1981 into three clauses: the right "to make and enforce contracts" clause ("contracting clause"); the right "to full and equal benefit of all laws and proceedings" clause ("equal benefit clause"); and the right to be free from unequal "punishment, pains [and] penalties" clause ("like punishment clause"). The Court noted that the Supreme Court had construed only the contracting clause. 564 F.2d at 1029. According to the Third Circuit, however, a fundamental distinction exists between the contracting clause and the other two clauses. *Id.*

With regard to the contracting clause, the court stated that the right to make and enforce contracts necessarily involves "relations between private individuals." *Id.* After all, the court noted, a black person usually contracts with another individual and not the state. Consequently, the contracting clause can be infringed by private individuals and does not require state action. *Id.*

The Court reached a different conclusion with respect to the equal benefit and like punishment clauses. The Court stated:

> The words "full and equal benefit of all *laws* and *proceedings* for the security of persons and property" (emphasis supplied), on the other hand, suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause. The like punishment clause may be read

---

**1.** 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

**2.** Timothy also cites *Eggleston v. Prince Edward Volunteer Rescue Squad*, 569 F.Supp. 1344 (E.D. Va.1983), and *Williams v. Northfield Mount Hermon School*, 504 F.Supp. 1319 (D.Mass.1981). Both of those cases, however, rely exclusively on *Mahone*, adding nothing to the *Mahone* analysis. Consequently, neither of those cases need be discussed.

in the same way. Only the state imposes or requires "taxes, licenses and exactions" and the maxim *noscitur a socus* suggests that the "punishment, pains [and] penalties" to which the clause refers are those imposed by the state.

564 F.2d at 1029–30.

This court cannot agree with Timothy that the *Mahone* decision is determinative here. The *Mahone* court's discussion of state action is confined within, and merely a part of, a larger issue before that court; whether Section 1981 should be construed broadly or narrowly. Further, state action was clearly alleged in that case. As the *Mahone* court stated, "in the instant case ... the complaint does allege state action. We need decide no more in this case." 564 F.2d at 1030. In other words, the *Mahone* court's discussion of state action was entirely unnecessary to the court's conclusion.

In addition, the focus of the *Mahone* court's analysis was unduly narrow in both what it reviewed in making its decision and in its interpretation of the statute. During its discussion of the state action requirement, the *Mahone* court confined its analysis to the language of the statute without reference to either the legislative history of the statute or Supreme Court precedent. The *Mahone* court's reading of the equal benefit and like punishment clauses is, in this court's opinion, entirely too restrictive. As the *Mahone* court recognized, Section 1981 was intended to eliminate all racial discrimination and consequently should be construed broadly. This court declines to follow the *Mahone* court's analysis.

Nor can this court agree with the analysis proposed by plaintiffs. Plaintiffs argue that Section 1981 is based on the Thirteenth Amendment. The Thirteenth Amendment does not require state action and consequently neither should Section 1981. Plaintiffs' proposed analysis, however, suffers from a fundamental flaw. Section 1981 is based on both the Thirteenth and Fourteenth Amendments. *See, e.g., General Building Contractors Ass'n.*

*v. Pennsylvania,* 458 U.S. 375, 390 n. 17, 102 S.Ct. 3141, 3149 n. 17, 73 L.Ed.2d 835 (1982); *Baker v. F & F Investment Co.,* 489 F.2d 829, 833 (7th Cir.1973). To state a claim under the Fourteenth Amendment, unlike the Thirteenth Amendment, a plaintiff must allege state involvement of some kind. *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972). Because plaintiff's argument rests on a faulty foundation, the court will not follow that argument here.

Having rejected the approach advanced by the parties to this action, this court will strike out on its own. This court will review the language of the statute and its legislative history. This court concludes that Section 1981 prohibits private as well as official acts of discrimination.

This court begins where *Mahone* both began and ended its' analysis, with the language of the statute. As the *Mahone* court recognized, "[i]f the language be clear it is conclusive. There can be no construction where there is nothing to construe." 564 F.2d at 1028 (quoting *United States v. Hartwell,* 73 U.S. (6 Wall) 385, 396, 18 L.Ed. 830 (1867)). Yet the *Mahone* court then found the "meaning" of Section 1981, not in the plain language of the statute, but in what it viewed as the obvious implications of the language used. This court is not at all convinced that the implications found by the *Mahone* court are the only ones that arise from the statutory language. Nothing in the wording of the statute compels the conclusion that state action is a prerequisite to Section 1981 liability. *See generally Griffin v. Breckenridge,* 403 U.S. 88, 97, 91 S.Ct. 1790, 1795, 29 L.Ed.2d 338 (1971). Indeed, when Congress has intended to limit the reach of a civil rights statute to official misconduct, it has done so expressly. *See* Act of April 9, 1866, ch. 31, § 2, 14 Stat. 27 (current version at 18 U.S.C. § 242 (1948)). *See also* 42 U.S.C. § 1983 (1979). The absence of any words expressly limiting Section 1981 to official acts of discrimination indicates that Congress did not intend to restrict the operation of that Section to such conduct.

The operative language of what is now Section 1981 originated in § 1 of the Civil Rights Act of 1866, Act of April 9, 1866, ch. 31, § 1, 14 Stat. 27 (reenacted as Act of May 31, 1870, ch. 114, § 16, 16 Stat. 140).[3] In enacting the Civil Rights Act of 1866, Congress was motivated by a desire to eradicate all racial discrimination. *See Jones v. Mayer Co.*, 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968). The impetus behind the Act of 1866 was Congressional concern over, not only official acts of racial discrimination, but purely private injustices as well. During the Congressional debates, assaults on blacks by private citizens were referred to on several occasions. *See* Cong. Globe, 39th Cong., 1st Sess., 339–40, 1835. *See generally Jones v. Mayer Co.*, 392 U.S. 409, 427–29, 88 S.Ct. 2186, 2197, 20 L.Ed.2d 1189 (1968). These private attacks were clearly viewed as the type of evil the Act of 1866 was designed to prevent. This court can only conclude that Congress intended that Section 1981, in its entirety, extend to private acts of discrimination.

Further support for this court's conclusion is found by comparing Sections 1 and 2 of the Act of 1866. Section 2 of the Act provided fines and prison terms for any person acting under color of law to deprive others of rights secured by Section 1.[4] In other words, only official misconduct was a criminal offense under Section 2. Section 2, exempts private acts of discrimination from the criminal sanctions it imposes. As the Supreme Court has stated, "[t]here would, of course, have been no private violations to exempt if the only 'right' granted by § 1 had been a right to be free of discrimination by public officials." *Jones v. Mayer Co.*, 392 U.S. 409, 425–26, 88 S.Ct. 2186, 2195, 20 L.Ed.2d 1189 (1968).

Section 1 of the Civil Rights Act of 1866 also contained the operative language of what is now 42 U.S.C. § 1982.[5] Sections 1981 and 1982 became two separate provisions in the 1870 reenactment. *See Hurd v. Hodge*, 334 U.S. 24, 30–31 n. 7, 68 S.Ct. 847, 849–851 n. 7, 92 L.Ed. 1187 (1948). The Supreme Court and the Seventh Circuit have both stated that because of their common origin, Sections 1981 and 1982 are not to be construed differently. *Tillman v. Wheaton-Haven Recreation Ass'n.*, 410 U.S. 431, 439–40, 93 S.Ct. 1090, 1094, 35 L.Ed.2d 403 (1973); *Baker v. F & F Investment Co.*, 489 F.2d 829, 833 (7th Cir.1973). The prohibitions of Section 1982 are not confined to official acts of discrimination. *Jones v. Mayer Co.*, 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968).

**3.** Section 1 of the Act of Apr. 9, 1866, read in part:

That all persons born in the United States and not subject to any foreign power, ... are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude, ... shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and person property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding.

**4.** Section 1 of the Act of Apr. 9, 1866, read in part:

That any person who, under color of any law, statute, ordinance, regulation, or custom, shall subject, or cause to be subjected, any inhabitant of any State or Territory to the deprivation of any right secured or protected by this act, or to different punishment, pains, or penalties on account of such person having at any time been held in a condition of salvery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, or by reason of his color or race, than is prescribed for the punishment of white persons, shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by fine not exceeding one thousand dollars, or imprisonment not exceeding one year, or both, in the discretion of the court.

**5.** Section 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Section 1981, then, should also reach private acts of discrimination.

Finally, 42 U.S. § 1985(3) [6] contains language similar to that of the equal benefit clause of Section 1981. In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court found that the equal protection provision of Section 1985(3) applies to private as well as official actions. *Id.*, at 96–102, 91 S.Ct. at 1795–1798. The Court stated:

> A century of Fourteenth Amendment adjudication has ... made it understandably difficult to conceive of what might constitute a deprivation of the equal protection of the laws by private persons. Yet there is nothing inherent in the phrase that requires the action working the deprivation to come from the state. Indeed, the failure to mention any such requisite can be viewed as an important indication of Congressional intent to speak in § 1985(3) of *all* deprivations of "equal protection of the laws" and "equal privileges and immunities under the laws", whatever their source.

*Id.* at 97, 91 S.Ct. at 1795 (citations omitted). The *Griffin* Court's holding, as well as its reasoning, lend additional support to this court's conclusion that Section 1981 prohibits private acts of discrimination.

Consequently, this court finds that plaintiffs have stated a claim for relief under that Section.

In Count II of their complaint, plaintiffs allege that their attackers, including the movant Timothy, conspired in violation of Section 1985(3). Timothy argues that plaintiffs have failed to state a claim under Section 1985(3) in that plaintiffs have failed to set forth material facts from which this court could infer a conspiracy. In addition Timothy contends that plaintiffs have failed to allege an overt act in furtherance of the alleged conspiracy.

■ Plaintiffs allege that a group of white males yelled racial slurs at Hawk and Hurley and then set upon them, giving Hawk and Hurley a severe beating. This court has little difficulty finding that these facts support an inference that Timothy and other attackers engaged in a conspiracy. Further, this court finds that the physical beating given Hawk and Hurley is an overt act in furtherance of the alleged conspiracy. *See Magayanes v. City of Chicago*, 496 F.Supp. 812, 816 (N.D.Ill.1980). Timothy's motion to dismiss plaintiffs Section 1985(3) claim must be denied.

■ Finally, Timothy moves that plaintiffs' Section 1983 [7] claim be dismissed be-

---

**6.** 42 U.S. § 1985(3) provides:

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this action, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right of privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**7.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

cause plaintiffs do not aver that Timothy was acting under color of state law. Timothy is correct in noting that plaintiffs have failed to allege that Timothy was acting under color of state law. However, a private person may be liable under Section 1983 when he engages in a conspiracy with individuals who are acting under color of state law, such as public officials. *See, e.g., Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980). Here, plaintiffs allege, in Count IV of their complaint, that their attackers conspired with the Police Defendants. This court has already ruled that plaintiffs allegations of a conspiracy between the attackers and the Police Defendants state a claim for conspiracy under 42 U.S.C. § 1985. *See Hawk v. Perillo,* 642 F.Supp. 380, 385–86 (N.D.Ill. 1985). This court sees no reason to depart from its prior holding. Timothy's motion to dismiss plaintiffs' claim under Section 1983 is denied.

For the foregoing reasons, it is hereby ordered that Timothy's motion to dismiss will be granted insofar as plaintiffs' have attempted to allege an independent cause of action under the Thirteenth Amendment. In all other respects, Timothy's motion to dismiss is denied.