Claudie PIERRE, on behalf of herself and as a representative of similarly situated individuals, Plaintiff,

v.

J.C. PENNEY COMPANY, INC., et al., Defendants.

No. 03CV4782RJDVVP.

United States District Court, E.D. New York.

Nov. 3, 2004.

K.C. Okoli, Esq., Emmanuel Roy, Esq., Agbayewa, Raymond & Roy, LLP, New York, NY, for Plaintiff.

Thomas A. Catalano, Esq., Steven Getzoff, Esq., Lester, Schwab, Katz & Dwyer, LLP, New York, NY, for Defendant J.C. Penney.

## MEMORANDUM & ORDER

DEARIE, District Judge.

In this proposed class action, plaintiff alleges that J.C. Penney stores in the New York City area single out black and African–American customers for particular scrutiny based on suspicions of shoplifting. She claims that her detention by security personnel at a store in Queens violated her right to equal benefit of the law guaranteed under 42 U.S.C. § 1981, the Fourth Amendment, and state and city law. J.C. Penney moves to dismiss the complaint pursuant to Rule 12(b)(6). For the reasons discussed below, the motion is granted on the Fourth Amendment claim but denied on the remaining claims.

## BACKGROUND

Plaintiff's allegations arise out of an incident that occurred on September 20, 2002, at a J.C. Penney store in Queens, New York. After leaving the store without making a purchase, plaintiff was approached by J.C. Penney security guards on the street. She claims that they accused her of shoplifting and forced her to return to the store. She alleges that she was verbally and physically abused. It is undisputed that a search revealed no stolen merchandise. Plaintiff became increasingly upset, but was not allowed to leave the detention area for nearly three hours. She claims that the security guards attempted to force her to sign a false confession, which she refused to do. Plaintiff requested a copy of the incident report but never received one. Security personnel did not call the police or file a complaint against her. Plaintiff, however, filed a police complaint against the store on September 23, 2002.

Plaintiff alleges that she was singled out because she is black. She also claims that she saw only non-white shoppers in detention, although she had seen many white customers shopping in the store.

## DISCUSSION

J.C. Penney moves to dismiss claiming that (1) plaintiff has not stated a § 1981 equal benefit claim because there is no nexus between defendant's actions and the state, and (2) that plaintiff cannot raise a Fourth Amendment claim against a nongovernmental actor. On a motion to dismiss, the Court must view the complaint in the light most generous to plaintiff and draw all reasonable inferences in her fa-

vor. *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985) (citing *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A motion to dismiss is granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

## A. § 1981 Equal Benefit Claim

Plaintiff contends that the store violated § 1981's "equal benefit" clause by subjecting her to unreasonable search and seizure, false imprisonment, and assault and battery. J.C. Penney argues that the equal benefit claim must be dismissed because plaintiff cannot demonstrate the necessary nexus between defendants' actions and the state.

■ Section 1981(a) provides in relevant part that "[a]ll persons … shall have the same right … to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …" To state a claim under § 1981, a plaintiff must allege "(1) [membership in] a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta,* 221 F.3d 329, 339 (2d Cir.2000).

### 1. Nexus to the State

■ Few cases in this circuit or elsewhere arise under the "equal benefit" clause of § 1981. *Felton v. Maines Cash & Carry, Inc.,* No. 00–CV–239, 2001 WL 118594 (N.D.N.Y. February 2, 2001), 2001 U.S. Dist. LEXIS 1118, *5 (noting the "dearth of case law regarding the 'equal benefit' clause."). Although a number of circuits require allegations of state action for purposes of the equal benefit clause, the Second Circuit recently rejected this

interpretation. *See Phillip v. University of Rochester,* 316 F.3d 291, 292 (2d Cir. 2003); *Chapman v. Higbee Co.,* 319 F.3d 825 (6th Cir.2003), cert. denied, — U.S. ——, 124 S.Ct. 2902, 159 L.Ed.2d 827 (2004) (*en banc* decision following *Phillip* rule and vacating its earlier decision requiring state action); *but see Youngblood v. Hy–Vee Food Stores, Inc.,* 266 F.3d 851 (8th Cir.2001), cert. denied, 535 U.S. 1017, 122 S.Ct. 1606, 152 L.Ed.2d 621 (2002) (requiring state action for purposes of equal benefit clause); *Brown v. Philip Morris Inc.,* 250 F.3d 789, 799 (3d Cir. 2001) (same). The Second Circuit concluded that, "[a]lthough the phrasing of the equal benefit clause does suggest that there must be some nexus between a claim and the state or its activities, the state is not the only actor that can deprive an individual of the benefit of laws or proceedings for the security of persons or property." *Phillip,* 316 F.3d at 295.

Other circuits have expressed concern that an attenuated connection between a private defendant and the state risks federalizing large areas of state tort law. The Third Circuit warned that not requiring state action would create a federal cause of action "whenever a white man strikes a black in a barroom brawl." *Mahone v. Waddle,* 564 F.2d 1018, 1029 (3rd Cir.1977) (in dicta suggesting that the equal benefit clause requires state action). *See also Chapman,* 319 F.3d at 842 (Suhrheinrich, J., dissenting) ("Under the majority's interpretation, the equal benefit clause conceivably can be applied to every garden-variety state tort law claim where the parties are of different races."); *Spencer v. Casavilla,* 839 F.Supp. 1014, 1019 (S.D.N.Y.1993) (pre-*Phillip* case following *Mahone* because "[e]xtending the 'equal benefit' clause to private conduct would have the effect of federalizing all racially-motivated state-law torts that im-

plicate 'the security of persons and property' "), affirmed in part and appeal dismissed in part, 44 F.3d 74 (2d Cir.1994).

The *Phillip* court was not persuaded by these concerns. The court emphasized that the equal benefit clause requires that a plaintiff demonstrate that the defendant's actions were motivated by race. *Phillip*, 316 F.3d at 295. Furthermore, the court highlighted that nothing in the legislative history suggested Congress intended to limit the reach of the statute. As the court noted, the contract clause of § 1981 prohibits racially motivated private conduct that interferes with rights under state contract law. There was no principled reason to suggest that Congress favored federalizing state *contract* law but not state *tort* law.

That said, *Phillip* provides little guidance on what type of link between a private actor and a state law or proceeding will satisfy the nexus requirement. *Id.* at 298 ("We do not here attempt to define the universe of laws and proceedings for the security of persons and property, believing this task best resolved case by case."). In *Phillip*, the nexus was rather explicit. Private university security officers had summoned the police to help disperse a group of black students gathered on university property. Although the police arrested and held four black students overnight, all charges were subsequently dismissed. The university admitted that its security officers had treated the students in a racist manner. The court held that "assuming that Section 1981 requires a nexus to state proceedings or laws but not state action, plaintiffs' allegations are sufficient because plaintiffs claim that defendants attempted to trigger a legal proceeding against plaintiffs but would not have taken the same action had white students engaged in the same conduct." *Id.* at 298. *See also Felton*, 2001 WL 118594

at *4, 2001 U.S. Dist. LEXIS 1118 at *11 (private security guard "acted in concert *with the authorities* to cause Plaintiff to be falsely arrested and maliciously prosecuted because of his race") (emphasis in original); *Lee v. Brown Group Retail Inc.*, No. 03–2304, 2003 WL 22466187 (D.Kan. Oct. 6, 2003), 2003 U.S. Dist. LEXIS 19384 (denying motion to dismiss by retailer who summoned police on suspicion that black patron had shoplifted).

J.C. Penney argues that under *Phillip*, this case should be dismissed because the store did not call the police, file a criminal complaint, or trigger a legal proceeding against plaintiff. The Court agrees that plaintiff has not alleged a nexus to a state legal *proceeding* for the purposes of § 1981 liability. However, the more difficult question is whether plaintiff's claims are sufficient to allege a nexus between defendants and a state *law* for the protection of persons and property.

### 2. Nexus Established by Allegations of State Law Violations

■ Plaintiff points to a number of state laws, the violation of which might satisfy the nexus requirement. For instance, plaintiff argues that the store violated New York General Business Law § 218 when it detained her. That section creates an affirmative defense for shopkeepers in civil actions who detain customers for a "reasonable time" if the store has "reasonable grounds" to believe the customer shoplifted. *Id.* Defendant argues that § 218 cannot supply the nexus, citing a handful of cases holding that a store's actions pursuant to this type of statute are not "state action" for purposes of § 1983 liability. *See, e.g., Josey v. Filene's, Inc.*, 187 F.Supp.2d 9 (D.Conn.2002); *Moher v. Stop & Shop Companies, Inc.*, 580 F.Supp. 723 (D.Conn.1984) (addressing similar Connecticut statute); *Estate of Iodice v. Gim-*

*bels, Inc.*, 416 F.Supp. 1054 (E.D.N.Y. 1976). However, as defendant itself acknowledges, § 1981 does not require traditional state action. Thus, these cases are inapposite.

Plaintiff also alleges that defendants violated state laws against assault, battery, and false imprisonment. J.C. Penney does not address whether these state laws could provide the necessary nexus.[1]

Thus, the question is whether allegations of standard-fare tort law, with no involvement by state actors, will suffice for purposes of the nexus element. The legislative history of § 1981, reviewed by the *Phillip* court, offers some insight as to the types of state torts actionable under the equal benefit clause. The legislative history reflects particular "concern over *private* acts motivated by racial discrimination." *Phillip*, 316 F.3d at 295 (emphasis added). For instance, Congress considered reports that the "hatred toward the negro as a freeman is intense among the low and brutal, who are the vast majority. Murders, shooting, whippings, robbing, and brutal treatment of every kind are daily inflicted upon them." *Id.* (quoting Cong. Globe, 39th Cong., 1st Sess. 94 (1865)). Senator Trumbull, who sponsored the legislation, identified "fundamental rights" to be protected by the statute, including "the enjoyment of life and liberty" and the freedom to "pursue and obtain happiness and safety." *Id.* (quoting Cong. Globe, 39th Cong., 1st Sess. 339, 475 (1866)). Similarly, "during the Congressional debates, assaults on blacks by private citizens were referred to on several occasions. These private attacks were clearly viewed as the type of evil the [section] was designed to prevent." *Hawk v. Perillo*, 642 F.Supp.

380, 391 (N.D.Ill.1985) (internal citations omitted).

The two primary private-defendant § 1981 cases involve this type of violent, racially motivated attack. *Hawk*, 642 F.Supp. 380; *Carey v. Rudeseal*, 703 F.Supp. 929 (N.D.Ga.1988). Hawk and his cousin were attacked by a group of white men shouting racial epithets. Among other claims, the *Hawk* plaintiffs alleged violation of their equal benefit rights under § 1981. Defendant Timothy moved to dismiss the equal benefit claim on the grounds that the plaintiffs failed to allege state action. The court denied the motion, concluding that "[n]othing in the wording of the statute compels the conclusion that state action is a prerequisite to Section 1981 liability." *Hawk*, 642 F.Supp. at 390. The court emphasized that Congress' intent was to reach "not only official acts of racial discrimination, but purely private injustices as well." *Id.* at 391. Similarly, *Carey v. Rudeseal* involved a violent attack on plaintiff by a defendant attending a nearby Ku Klux Klan gathering. Carey brought suit in federal court under 42 U.S.C. §§ 1981, 1985(2), 1986, and Georgia tort law. The court concluded that "section 1981 provides a cause of action against private individuals for racially-motivated, intentionally-inflicted injury and does not require state action in the deprivation of rights." *Id.* at 930, n. 1.

Based on these cases, the Court concludes that defendant's motion to dismiss must be denied. *See Battle v. Dayton–Hudson Corp.*, 399 F.Supp. 900 (D.Minn. 1975) (denying motion to dismiss on facts similar to those alleged here, though not specifying whether case arose under the contract or equal benefit clause of § 1981). Plaintiff alleges that defendants violated

---

1. Plaintiff also argues that the alleged violation of the Fourth Amendment satisfies the nexus requirement. As discussed below, plaintiff fails to state a claim under the Fourth Amendment and thus cannot establish the necessary nexus on this ground.

 

various state laws against assault, battery, and false imprisonment—laws clearly intended for the "security of persons." To be sure, plaintiff does not allege the type of violent attack that originally concerned Congress. However, the severity of the harm does not offer a principled way to distinguish the cases. Furthermore, the racially motivated acts alleged here are examples of the more subtle, but no less invidious, type of private discrimination that seeks to deprive African Americans, and other people of color, of their civil rights. *See* Margaret Downing, *A Closer Look at Dillard's*, HOUSTON PRESS, Jan. 8, 2004; Anne–Marie G. Harris, *Shopping While Black: Applying 42 U.S.C. § 1981 to Cases of Consumer Racial Profiling*, 23 B.C. THIRD WORLD L.J. 1 (2003). There is nothing in the text of the clause, or in the legislative history, to suggest that Congress did not intend to reach this form of invidious discrimination.

## B. The Fourth Amendment Claim

■ Plaintiff contends that defendants violated her Fourth Amendment rights against search and seizure. Plaintiff appears to raise this claim both in the context of her § 1981 claim and as an independent cause of action. J.C. Penney argues that these claims must be dismissed because the Fourth Amendment constrains state action, not purely private action. *See Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The Court agrees.

### CONCLUSION

For the foregoing reasons, J.C. Penney's motion to dismiss the § 1981 equal benefit claim is denied. The motion is granted with respect to plaintiff's Fourth Amendment claim.

SO ORDERED.