**Ana M. UVIEDO, Plaintiff-Appellee,**

v.

**STEVES SASH & DOOR COMPANY, Defendant-Appellant.**

No. 83–1415.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1985.

Rehearing and Rehearing En Banc Denied May 13, 1985.

George P. Parker, Jr., Theo. F. Weiss, San Antonio, Tex., for defendant-appellant.

Les Mendelsohn, Barry H. Beer, San Antonio, Tex., for plaintiff-appellee.

## ON PETITION FOR REHEARING

(Opinion August 16, 1984, 5 Cir., 1984, 738 F.2d 1425)

Before THORNBERRY, WILLIAMS, and GARWOOD, Circuit Judges:

GARWOOD, Circuit Judge:

Appellee Uviedo has filed a petition for rehearing directed to our prior holding reversing the district court's award of attorneys' fees in her favor. *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1432–33 (5th Cir.1984). For the reasons and to the extent set out below, the motion is granted.

As we observed in our original opinion, Mrs. Uviedo's instant Title VII suit against appellant Steves Sash & Door Company ("Steves"), her former employer, presented four disparate wage claims, two claims asserting discriminatory denial of promotion and one claim of constructive discharge. For these various claims Mrs. Uviedo sought a total of approximately $48,000 in damages, plus injunctive and declaratory relief. She was wholly unsuccessful on three of the four wage claims, on one of the two promotion claims, and on the constructive discharge claim. On the two claims on which she succeeded she was awarded a total of $386 damages, plus interest, representing $98 on one wage claim and $288 on one promotion claim. No injunctive or declaratory relief was awarded. We held that under these circumstances Mrs. Uviedo was not entitled to any attorneys' fees on any of her claims under "the central issue" test of *Commonwealth Oil Refining Co., Inc. v. E.E.O.C.*, 720 F.2d 1383, 1385 (5th Cir.1983), *rehearing en banc denied*, 734 F.2d 1479 (5th Cir.1984). In so holding, we applied the *Commonwealth* test to Mrs. Uviedo's lawsuit *as a whole*, observing that "under *Commonwealth Oil*, a greater measure of success in the *context of the suit as a whole* is necessary than that achieved by plaintiff here" (emphasis added), and that although Mrs. Uviedo prevailed in some claims, she did not prevail "in most of them, or in the most important of them, or in any that could fairly be described, singly or collectively, as the central issue in this case.... [U]nder the law of this circuit, she was not '*the* prevailing party' in this lawsuit ...." *Uviedo*, 738 F.2d at 1433.[1]

We believe that the result we previously reached would have been mandated by *Commonwealth* had all of Mrs. Uviedo's claims been related to each other. However, our original opinion neglected to consider application of the doctrine that a plaintiff's claims which are unrelated to each other, though formally and properly joined in a single suit against a single defendant, are nevertheless to be con-

1. We also take this occasion to correct a printing error in our prior opinion: The fourth complete sentence on 738 F.2d at 1433 should commence "Appellee is correct" rather than "Appellant is correct."

sidered for attorneys' fees purposes as if each were brought in a separate suit, so that a party's success or failure on one claim is not to be considered in determining that party's entitlement (or vulnerability) to attorneys' fees on an unrelated claim. As the Supreme Court stated in *Hensley v. Eckerhart*, 461 S.Ct. 424, 103 S.Ct. 1933, 1940 & n. 10, 76 L.Ed.2d 40 (1983):

> "The congressional intent to limit [attorneys' fees] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.[10]

---

"10   If the unsuccessful claim is frivolous, the defendant may recover attorney's fees incurred in responding to it...."

While the procedural posture of the litigation and the disposition of the appeal there did not require the *Commonwealth* panel to analyze the facts before it in terms of the unrelated claims doctrine, that panel was nevertheless plainly aware of the doctrine.[2]

■ Turning again to *Hensley*, "[w]e recognize that there is no certain method of determining ·when claims are 'related' or 'unrelated.'" *Id.* at 1941 n. 12. Nevertheless, we believe that this record strongly suggests that at least one of the claims on which Mrs. Uviedo succeeded was unrelated to any other claim, and that in any event the *Commonwealth* "central issue" test should be applied to each unrelated claim (or to each group of claims related to each other but unrelated to other claims) in the first instance by the district court, as we directed in *Commonwealth* itself.   720 F.2d at 1386 n. 4.[3]

2.  Thus, we observed in *Commonwealth*, 720 F.2d at 1386 n. 4:
> "As the Supreme Court indicated in *Eckerhart*, 103 S.Ct. at 1940, the district court should conduct a separate factual inquiry with regard to each 'unrelated claim' advanced by the plaintiff.  Indeed, 'if [any unrelated] claim is frivolous, the defendant may recover attorney's fees incurred in responding to it....'  *Id.* n. 10."

Mrs. Uviedo had what may be fairly characterized as four separate periods of employment with defendant Steves, during which she worked in at least two or three different capacities.   First, she worked from August 1968 to February 1970 in the accounting and payroll department, starting at a rate of $1.75 an hour and receiving $1.95 when she voluntarily terminated on account of pregnancy.   Second, she performed temporary fill in or substitute work on several brief occasions during the period after February 1970 and before December 1971.   On one of these occasions, prior to June 1971, she substituted for two weeks for Ms. Davis, of the accounting department, while the latter was on vacation. Third, she was rehired on a full-time basis December 27, 1971 and commenced work pursuant thereto in early January 1972 in the personnel department, though also performing some accounting duties.   She was paid $2.00 an hour.   Feeling that she was discriminated against in respect to her wages as compared to those of Ms. Fisher, also of personnel, Mrs. Uviedo resigned on or about February 15, 1972, filing her EEOC complaint a couple of days later. Fourth, and finally, she was rehired by defendant April 24, 1972, and worked initially in the purchasing department and later in accounting and payroll, first at $2.25 an hour and then at $2.40, until mid-January 1973, when, again angered at another instance of what she felt to be wage discrimination, she resigned.   Shortly afterward, she supplemented her EEOC complaint with additional charges.

Mrs. Uviedo's several claims, and the dispositions made of them in this litigation, may be summarized as follows:

Wage Claims

3.  We observe that the district court's judgment, and its findings and conclusions, were all entered prior to *Hensley*, and, of course, prior to *Commonwealth*.  While the district court's order denying motion for new trial was entered on the same day *Hensley* was decided, we believe it a fair assumption that the court below was not then aware of *Hensley* (which was not cited by or to it).

(1) Claim for discriminatory wage rate for the two weeks she substituted for Ms. Davis, based on a comparison of Mrs. Uviedo's $2.25 to the $2.50 or $2.60 paid Ms. Davis, a nonminority. This relates to Mrs. Uviedo's second, or part-time and intermittent, employment period; it may also relate to part of her initial period of employment. (Ms. Davis worked for defendant from 1962 until June 1971; she was rehired in September 1972.) The magistrate denied this claim, finding Ms. Davis' substantially greater tenure and skills, rather than nonminority status, to have been the basis for the distinction. The district court affirmed.[4]

(2) Claim for discriminatory wage rate for her third period of employment, in January and February 1972, based on a comparison of Mrs. Uviedo's $2.00 hourly rate to the $2.35 paid Ms. Fisher, a nonminority to whose position as personnel clerk Mrs. Uviedo succeeded. The magistrate denied this claim, but the district court reversed, awarding Mrs. Uviedo $98 damages in respect thereto. We affirmed.

(3) Claim for discriminatory wage rate during her fourth period of employment, starting April 24, 1972, based on a comparison of Mrs. Uviedo's $2.25 an hour in the purchasing department to the $2.90 paid Ms. Green, a nonminority. The magistrate denied this claim, finding Ms. Green held a different, more responsible position. The district court affirmed.

(4) Claim for discriminatory wage rate during the latter part of her fourth period of employment, based on a comparison of the $2.40 hourly Mrs. Uviedo was then receiving in accounting and payroll to the $2.50 paid Ms. Stevens, a nonminority sales secretary hired in April 1972 and raised in December 1972 from $2.25 an hour to $2.50. The magistrate denied this claim, based on the differing posi-

tions, and Ms. Stevens' shorthand ability, which Mrs. Uviedo lacked. The district court affirmed.

Promotion Claims

(5) In July and August 1972, in her final employment period, Mrs. Uviedo sought but was denied a promotion to personnel clerk, the position going to Ms. Gibbon, a nonminority, in August. Though the magistrate denied this claim, the district court found it to have merit, and awarded Mrs. Uviedo differential back pay from August 1972 to January 1973, when she resigned, in the total amount of $288. We affirmed.

(6) In October 1972, also in her final period of employment, Mrs. Uviedo sought a promotion to head bookkeeper, but the position was given to Ms. Davis instead. The magistrate denied this claim, finding the promotion was based on Ms. Davis' greater qualifications and tenure. The district court affirmed.

Constructive Discharge Claim

(7) Finally, Mrs. Uviedo claimed that her resignation in January 1973 was a constructive discharge, based, at least in large part, on her last wage claim, that concerning the December 18, 1972 raise given Ms. Stevens, and the denial of a raise Mrs. Uviedo sought in January 1973. The magistrate denied this claim, and the district court affirmed, at least in part on the theory that wage complaints do not give rise to constructive discharge.

◼ It appears to us that Mrs. Uviedo's second wage claim, the only one related to her third period of employment or involving Ms. Fisher, is likely unrelated to any of her other claims. If this is so, then she would be entitled to attorneys' fees in respect to it, as she prevailed on that claim.[5] Moreover, the claim or claims per-

---

**4.** Mrs. Uviedo did not perfect an appeal from the district court's judgment.

**5.** In its award of $7,500 attorneys' fees to Mrs. Uviedo, the district court relied on an open court stipulation of the parties which is set out in our prior opinion. 738 F.2d at 1432 n. 10.

The language and substance of this stipulation, as well as the fact that it was entered into (and effectuated by the district court) prior to *Hensley,* plainly demonstrate that it was based on the legal assumption that, and was intended to apply to a situation in which, only one party "wins," and only one loses, the lawsuit as a

taining to Mrs. Uviedo's first and second periods of employment likewise appear unrelated to any others in the suit, and if this is so then, since Mrs. Uviedo did not succeed on any such claim, she would not be entitled to any attorneys' fees in that respect.[6] Finally, some of the remaining claims may be unrelated to each other. These matters should be addressed in the first instance by the district court, and its determination in regard thereto will be entitled to substantial deference.

Accordingly, Mrs. Uviedo's motion for rehearing is granted in part. Our previous affirmance of the district court's judgment in all respects other than attorneys' fees remains in effect and is wholly undisturbed by our present action. However, our previous outright reversal of the award of attorneys' fees is set aside and in lieu thereof we now reverse and remand the award of attorneys' fees for further proceedings consistent herewith. On remand, the district court shall initially determine whether there are any unrelated claims and, if, as appears to be the case, there are, shall then divide the case into different units, each of which will consist of a single claim (or a single group of claims each related to the others) unrelated to any other in the case. As to each such unit separately considered the court will apply the "central issue" test of *Commonwealth* in determining entitlement to attorneys' fees.[7]

The petition for rehearing is granted in part. The judgment below is affirmed in all respects other than the award of attorneys' fees to appellee Uviedo. So much of the judgment below as awards Mrs. Uviedo attorneys' fees is reversed and remanded for further proceedings not inconsistent herewith.

AFFIRMED in part; REVERSED and REMANDED in part.

---

whole, for purposes of eligibility for (and exposure to) award of attorneys' fees; it obviously was not intended to apply to attorneys' fees awards for individual claims (or groups of related claims) unrelated to others in the lawsuit. Therefore, we hold that the stipulation is inapplicable where the suit includes unrelated claims and so is required to be treated under *Hensley* as two or more lawsuits for purposes of eligibility for (and exposure to) attorneys' fees awards.

6. Since we upheld the determination of the magistrate and district court that none of Mrs. Uviedo's claims were frivolous, there is no question of attorneys' fees recovery by Steves. *See* our prior opinion. 738 F.2d at 1433 n. 13.

7. Judges Thornberry and Williams remain of the view, expressed in Judge Williams' opinion concurring in our original disposition, 738 F.2d at 1433, that the *Commonwealth* "central issue" test, though binding on this panel, should not be the law of this Circuit.