849 F.2d 511
 47 Fair Empl.Prac.Cas. 467,
47 Empl. Prac. Dec. P 38,119
Maximo AVILA, Plaintiff-Appellant,
v.
The COCA-COLA COMPANY, A Delaware Corporation, registered to
do business in the State of Florida, Defendant-Appellee.
 No. 86-3849.
 United States Court of Appeals,
Eleventh Circuit.
 July 12, 1988.
 
 Robert E. Weisberg, Lipman & Weisberg, P.A., David M. Lipman, Miami, Fla., for plaintiff-appellant.
 Thomas Garwood, Jr., Orlando, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, TJOFLAT, Circuit Judge, and CLEMON*, District Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This appeal concerns solely the issue of attorney fees. We affirm in part, reverse in part, and remand.
 
 I.
 
 2
 In December 1980, Maximo Avila filed an administrative claim with the Equal Employment Opportunity Commission (EEOC) alleging that his employer, Coca-Cola Co., had discriminated against him on the basis of his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17. Specifically, the claim alleged that Avila had been denied promotions and merit pay increases by Coca-Cola because he was of Cuban origin. The EEOC subsequently dismissed the charge and issued a right to sue letter, and Avila filed a complaint in the district court. The complaint repeated the allegations in the administrative claim and requested two forms of relief: back pay and an injunction ordering Coca-Cola to promote Avila to the position he would have held but for the alleged discrimination.
 
 
 3
 A two-day trial was held on February 6 and 7, 1984. On the first day of the trial, Avila testified that he had been hired by Coca-Cola as an electrician's helper in 1962, and that he had received a number of promotions over the next several years. After he attained the position of Engineer I in 1976, however, his career progression came to an abrupt halt. Avila testified, without pointing to any specific incident that would substantiate his allegations, that Coca-Cola had denied him promotions and pay increases because of his national origin.
 
 
 4
 In addition to Avila's own testimony, his trial attorneys, Robert E. Weisberg and David M. Lipman, presented documentary evidence regarding Coca-Cola's employee evaluation, promotion, and compensation policies. They also presented documentary evidence showing the promotion and compensation histories of all persons employed in Coca-Cola's engineering work force during 1983. Finally, they presented the testimony of a number of witnesses, including a former Coca-Cola employee who had worked with Avila and several independent contractors who had been involved in projects for Coca-Cola in which Avila had also been involved. These witnesses generally testified that Avila was a competent and industrious employee.
 
 
 5
 Coca-Cola's case consisted of the testimony of several officers and supervisors at Coca-Cola, each of whom testified that Avila had not been promoted beyond the position of Engineer I because he lacked qualifications for the higher positions. These witnesses also testified that Avila was a somewhat undependable employee who manifested considerable contempt toward his superiors. The testimony suggested that Avila's difficulties at work were due not to discrimination by Coca-Cola, but rather to Avila's own generally uncooperative attitude.
 
 
 6
 During plaintiff's cross-examination of Coca-Cola's witnesses on the second day of trial, however, it became apparent that a connection existed between Avila's filing of his EEOC claim in 1980 and his subsequent difficulties with Coca-Cola. This connection came to light through interrogation of Coca-Cola's witnesses by both Avila's attorney and the trial judge. John Cahill, Manager of Engineering, testified that Avila had not received a pay increase following his evaluation in September 1981 because "[t]he EEOC hearing was involved at [that] time, plus pending litigation here, I believe, [and] we decided it was not appropriate to give a raise until these things had been settled." Harold Heath, Avila's immediate supervisor, testified that Avila had not been evaluated since September 1981 "[b]ecause of the action with the EEOC and this action here." And Coca-Cola Vice President George Truitt acknowledged that he had written the following notations on the cover of Avila's 1981 evaluation: "This employee filed an EEO[C] charge against the company claiming discrimination. This is not a positive attitude."
 
 
 7
 Notwithstanding this damning testimony, Avila's attorneys did not move the court to amend the complaint pursuant to Fed.R.Civ.P. 15(b) to state a Title VII retaliation claim under 42 U.S.C. Sec. 2000e-3(a) (1982).[1] Understandably troubled by this apparent ineptitude on the part of Avila's attorneys, the trial judge, at the close of all the evidence, suggested sua sponte that such a motion be made:
 
 
 8
 [I]n this case ... there's not the slightest shred of evidence that the national origin of Mr. Avila has anything to do with the case, not a shred of evidence. To the contrary, the evidence is, if anything, Cubans are treated in the same manner if not better maybe than citizens of the United States who have their national origin here. Now if you have any case, Mr. Weisberg, you have made out a good case--between you and myself I might add--a very good case for a definite showing that Mr. Avila was discriminated against by reason of retaliation for having filed somewhere in December of 1980 a charge with the EEOC....
 
 
 9
 Avila's attorneys followed the trial judge's advice and moved the court to amend the complaint to state a claim for retaliation. The court granted the motion,[2] and, without taking further evidence, entered a dispositive order. The court found a "complete lack of evidence" to support Avila's national origins claim, and denied relief on that ground. The court held, however, that the evidence adduced at trial made out a valid claim of retaliation. Accordingly, the court ordered back pay for the regular salary increases that Avila should have received but did not because of the retaliation. The court also ordered that Avila be evaluated by a new panel of supervisors and be promoted should he prove qualified for such promotion.
 
 
 10
 Avila's attorneys then moved the district court for an award of attorney fees pursuant to 42 U.S.C. Sec. 2000e-5(k) (1982).[3] Weisberg requested $32,570 for 325.7 claimed hours, and Lipman requested $7260 for 60.5 claimed hours. The district court held that the attorneys could recover fees only for the claim on which Avila had succeeded, the retaliation claim. In determining the number of hours expended in connection with that claim, the court simply took the total number of hours claimed for the entire litigation and subtracted all hours expended before February 7, 1984--the second day of the two-day trial and the day on which the retaliation issue first came to light. As a result, Weisberg's reimbursable hours were cut to 133.05, and Lipman's were cut to 25.75.
 
 II.
 
 11
 This appeal concerns only the attorney fees issue. We affirm the district court's holding that Avila's attorneys may recover fees only for the retaliation claim, but we remand for a new determination of the number of hours expended in connection with that claim.
 
 
 12
 Avila's attorneys contend that they are entitled to fees for the unsuccessful national origins claim in addition to fees for the successful retaliation claim because the two claims are related. We agree that, under the law of this circuit, the two claims may be regarded as "related" for purposes of determining the attorney fees award. See Popham v. City of Kennesaw, 820 F.2d 1570, 1579 (11th Cir.1987). However, as we suggested in Popham, a district court calculating a fee award may disallow fees for an unsuccessful claim "even though the unsuccessful and the successful claims are related[,] if the plaintiff obtained only limited success." Id. at 1579-80 (citing Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983)).
 
 
 13
 A plaintiff obtains limited success when the substantive relief granted is something less than that which he would have been granted had he succeeded on the unsuccessful claim. See, e.g., Erkins v. Bryan, 785 F.2d 1538, 1545-46 (11th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986). Here, the relief Avila obtained due to his success on the retaliation claim was of a different nature and considerably less than the relief he would have obtained had he also succeeded on the national origins claim.[4] Thus, we hold that the district court had discretion to disallow, at least in part, fees for the unsuccessful national origins claim. Under the facts of this case, we conclude that the district court did not abuse its discretion in disallowing all fees for that claim.[5]
 
 
 14
 We further hold, however, that the district court erred in calculating the number of hours expended in connection with the retaliation claim. The district court awarded fees for only those hours expended on or after February 7, 1984, the day of the trial on which the retaliation issue first came to light. Certainly, some of the work performed before February 7 was essential to the retaliation claim. For example, there would have been no complaint to amend to state the retaliation claim had Avila's attorneys not filed a complaint in the first place. Further, some of the evidence they developed concerning Avila's compensation history at Coca-Cola may have been necessary to the district court's assessment of damages with respect to the retaliation claim. The district court is in the best position to make that kind of determination. We therefore remand the case for a redetermination of the number of attorney hours allocable to the retaliation claim.[6] We are mindful that an exact allocation is impossible, and we emphasize that the district court's determination on remand will not be disturbed on appeal absent an abuse of discretion. See Foster v. Board of School Comm'rs, 810 F.2d 1021, 1025 (11th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987).
 
 
 15
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 RONEY, Chief Judge, specially concurring:
 
 16
 I concur, but with this understanding: just as the district court must count certain of the hours spent on the case before the retaliation claim was stumbled upon by the plaintiff's attorneys during trial, the court must likewise subtract from its original award that portion of time spent after February 7, 1984 which was devoted to the national origin claim. By awarding all the hours requested by plaintiff's attorneys after February 7, and none before that date, the district court undoubtedly knew it had included some time and expenses properly allocable to the national origin claim and had missed certain pre-February hours allocable to the retaliation claim. The district court probably concluded that the hours offset each other and thought that would be a fair and logical way to decide the matter. See Gaines v. Dougherty County Board of Education, 775 F.2d 1565, 1571 (11th Cir.1985) (district court accorded wide discretion in determining attorney's fees).
 
 
 17
 It is entirely possible that, had the retaliation claim been properly presented, all of this litigation could have been avoided. Certainly, defendant has not appealed the adverse decision on the retaliation claim and may have complied with an administrative order had it been confronted with this claim early on. Defendant did not have that chance, however, and while incurring its own fees and plaintiff's fees on the retaliation claim, it should not be assessed one nickel for the fees or expenses incurred by plaintiff for the entirely groundless national origin claim. This decision should not be interpreted as supporting substantial additional recovery, if any.
 
 
 
 *
 Honorable U.W. Clemon, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Section 2000e-3(a) provides that
 [i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because he has made a charge, testified, assisted, or participated in any investigation, proceeding, or hearing under this subchapter.
 
 
 [2]
 Avila had not filed a claim of retaliation with the EEOC, and therefore had not exhausted his administrative remedies with respect to that claim. See 42 U.S.C. Sec. 2000e-5(e) (1982). The district court nevertheless allowed the amendment, relying on Gupta v. East Texas State Univ., 654 F.2d 411 (5th Cir. Unit A Aug. 1981). In Gupta, the court held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. at 414. Coca-Cola does not appeal the district court's ruling on the motion to amend the complaint; therefore, the correctness of that ruling is not before us
 
 
 [3]
 Section 2000e-5(k) provides that
 [i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs....
 Because Avila succeeded on the retaliation claim, he was a "prevailing party" for purposes of section 2000e-5(k). See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.") (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)). Of course, that Avila was a "prevailing party" only brings him "across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.' " Hensley, 461 U.S. at 433, 103 S.Ct. at 1939.
 
 
 [4]
 With respect to back pay, Avila was awarded only the regular salary increases he would have received but for the retaliation that occurred after he filed his EEOC claim in December 1980. In connection with his national origins claim, Avila had requested back pay going back to 1974. With respect to promotion, the district court ordered only that Avila be evaluated by a new panel of supervisors and be promoted should he prove qualified. Thus, the relief with respect to promotion comprehended the distinct possibility that Avila would ultimately receive no promotion at all, provided that Coca-Cola found him unqualified. Had the district court ruled in Avila's favor on the national origins claim, it would have necessarily rejected as pretextual any explanation proffered by Coca-Cola for not promoting Avila, and it would have entered an order requiring Coca-Cola to promote Avila immediately
 
 
 [5]
 We have reviewed the entire record, and we agree with the district court that there was "not the slightest shred of evidence that the national origin of Mr. Avila ha[d] anything to do with" his difficulties with Coca-Cola. We have observed in the past that "[t]ime spent pursuing unsuccessful claims that were clearly without merit should be excluded." Popham v. City of Kennesaw, 820 F.2d 1570, 1579 (11th Cir.1987) (quoting Jones v. Diamond, 636 F.2d 1364, 1382 (5th Cir.) (en banc), cert. dismissed sub nom. Ledbetter v. Jones, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981))
 
 
 [6]
 The district court is directed to make a similar redetermination on remand with respect to appellant's request for litigation expenses