Timothy CAREY, Plaintiff,

v.

James William RUDESEAL, Marion Franklin Shirley, Jr., and Randall Wiley Smith, Defendants.

Civ. A. No. 4:85–cv–358–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Dec. 30, 1988.

See also 112 F.R.D. 95.

George Brian Spears, Office of George Brian Spears, Atlanta, Ga., Kathleen L. Wilde, American Civ. Liberties Union, Southern Regional Office, Atlanta, Ga., for Timothy Carey.

James William Rudeseal, Cedartown, Ga., pro se.

Jeffrey Ross Sliz, Office of Jeffrey Ross Sliz, Lawrenceville, Ga., for Marion Franklin Shirley, Jr. and Randall Wiley Smith.

ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Plaintiff Carey's Motion to Reconsider an Order of the Court which denied Carey an award of

attorney's fees. Upon review of the motion and brief submitted, for reasons set forth below, the Motion shall be DENIED.

### I. Factual Background

Timothy Carey filed this civil rights action alleging that the defendants conspired to violate his rights protected by 42 U.S.C. §§ 1981, 1985(2), 1986, and Georgia tort law. The Complaint alleged that on April 7, 1984, members of the Cedartown, Georgia, Klavern of the Southern Knights of the Ku Klux Klan, met to pass out literature and solicit donations on Main Street in Cedartown (hereinafter, the "demonstration"). The three defendants, James William Rudeseal, Marion Franklin Shirley, Jr., and Randall Wiley Smith, helped organize and participated in the demonstration. Carey was present in Cedartown that day while on leave from service in the Navy.

Carey alleged that while he was riding his bicycle past the gathering of Klansmen, racial slurs were shouted at him. When he dismounted to "shoo away" a dog that had been following him, Defendant Smith struck him repeatedly with a set of brass knuckles and sprayed mace into his face.

Plaintiff alleged that after the demonstration, Defendants Rudeseal and Shirley entered into a conspiracy to hide Defendant Smith and prevent Carey from learning his identity. Smith subsequently pleaded guilty to a charge of simple battery against Carey in the Superior Court of Polk County, Georgia.

In a Supplemental Complaint in this case, Carey alleged that after the sentencing hearing of Defendant Smith, Smith verbally assaulted Carey in the Polk County Courtroom.

■ At the close of trial in the instant case, Carey suggested to the jury an award of over $110,000.00 in compensatory and punitive damages against the three defendants. The jury returned a verdict in favor of the defendants on all counts of the Complaint. The jury found in favor of Carey, however, on the verbal assault claim based upon § 1981 as pleaded in the Supplemental Complaint.[1] The jury awarded Carey $1,000.00.

### II. The Attorney Fee Petition

After entry of judgment, Carey filed a petition for attorney's fees, as the prevail-

---

1. Title 42 U.S.C. § 1981 provides as follows:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....
   The Court had instructed the jury that if the proper elements were satisfied, Carey could recover from Mr. Smith under the "full and equal benefit" phrase of section 1981. In so instructing, the Court determined that section 1981 provides a cause of action against private individuals for racially-motivated, intentionally-inflicted injury and does not require state action in the deprivation of rights.
   In so ruling, the Court followed *Hawk v. Perillo*, 642 F.Supp. 380 (N.D.Ill.1985) (section 1981 reaches private, racially-motivated, intentionally-inflicted physical injury), and *Central Presbyterian Church v. Black Liberation Front*, 303 F.Supp. 894, 901 (E.D.Mo.1969) (state action not required under "full and equal benefit" phrase where private organization disrupted church services).
   Carey had relied upon *Vietnamese Fishermen, ect. v. Knights of the K.K.K.*, 518 F.Supp. 993, 1008–09 (S.D.Tex.1981). While the court in that case stated that "[i]t is well settled that the 'full

and equal benefit of all laws' guarantee of § 1981 applies to private action," *citing Central Presbyterian*, the court cited a Third Circuit case to the contrary, *Mahone v. Waddle*, 564 F.2d 1018 (3rd Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), and ruled that it was unnecessary to resolve the issue, since the plaintiffs there could properly proceed under the contract phrase of *section* 1981.
   This Court followed *Hawk* and *Central Presbyterian*, rather than *Mahone* and *Shaare Tefila Congregation v. Cobb*, 785 F.2d 523, 525–26 (4th Cir.1986), *rev'd on other grounds*, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987), which held that state action was required under the "full and equal benefit" clause of *section* 1981. The Court followed the district court cases because the conclusion in *Mahone* was dictum, since state action was present; the Fourth Circuit followed *Mahone* with little analysis; and neither analyzed the legislative history.
   In the legislative history, as noted by the court in *Hawk*, "[d]uring the Congressional debates, assaults on blacks by private citizens were referred to on several occasions. [citations]. These private attacks were clearly viewed as the type of evil the Act of 1866 [the origin of § 1981] was designed to prevent." *Hawk*, 642 F.Supp. at 391.

ing party, pursuant to 42 U.S.C. § 1988.[2] Originally the petition sought attorneys' fees of $26,418.00 for 188.70 hours of attorney services, but later, the compensable hours requested were reduced to 120.70. The Court denied the request for fees on the ground that Carey was not the "prevailing party," because he had not succeeded on the central issue of the litigation nor obtained substantially the relief requested. Now before the Court is Carey's Motion for Reconsideration of the denial of his petition.

### III. The Standard for Determining the Prevailing Party

In this Circuit, as in the Fifth, the standard used to determine whether the plaintiff is the "prevailing party" under § 1988 has been whether the plaintiff "has received substantially the relief requested or has been successful on the central issue" of the litigation. *See Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (*en banc*), *citing Watkins v. Mobile Housing Board*, 632 F.2d 565, 567 (5th Cir. Unit B 1980). This test is often called the "central issue" test.

In all other Circuits, federal courts apply what is termed the "significant issue" or "generous formulation" test. *See the following cases*, cited in the dissent in *Texas State Teachers v. Garland Indep. School Dist.*, 837 F.2d 190, 195 (5th Cir. 1988), *cert. granted*, —— U.S. ——, 109 S.Ct. 51, 102 L.Ed.2d 30 (1988) (Goldberg, J., dissenting)[3]: *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978) (the seminal case for this test); *Miller v. Staats*, 706 F.2d 336, 340–41 (D.C.Cir.1983); *Gingras v. Lloyd*, 740 F.2d 210, 212 (2d Cir.1984); *Abraham v. Pekarski*, 728 F.2d 167, 175 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Lotz*

*Realty Co., Inc. v. U.S. Dept. of Housing*, 717 F.2d 929, 931 (4th Cir.1983); *Kentucky Association for Retarded Citizens, Inc. v. Conn.*, 718 F.2d 182 (6th Cir.1983); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1276–77 (7th Cir.1983); *Fast v. School Dist. of City of Ladue*, 728 F.2d 1030, 1032 (8th Cir.1984) (en banc); *Lummi Indian Tribe v. Oltman*, 720 F.2d 1124, 1125 (9th Cir. 1983); *In re Kansas Congressional Dists. Reapportionment Cases*, 745 F.2d 610, 612 (10th Cir.1984). Under the significant issue test, a plaintiff is a prevailing party when he or she has prevailed upon any significant issue in the litigation which achieves some of the benefit the party sought in bringing the suit. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

#### A. Eleventh Circuit Law.

The Eleventh Circuit cases on § 1988 attorneys' fees, where the plaintiff has achieved success on some but not all claims, appear to variously employ one or the other of the two standards. In the instant case, application of the central issue test results in a denial of attorney's fees to Carey, while application of the significant issue test would permit an award of fees. This is so because the verbal assault claim on which Carey succeeded was a significant issue of the litigation, but it was not the central issue.

##### 1. The Central Issue Test in the Eleventh Circuit.

In the *en banc* case of *Martin v. Heckler*, the court held that the test is "whether [the party] has received substantially the relief requested or has been successful on the central issue." *Id.* 773 F.2d at 1149 (citation omitted). Another *en banc* case to apply the central issue test is *Jones v. Diamond*, 636 F.2d 1364, 1378–82 (5th Cir.

---

**2.** Section 1988 provides in part:

In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title, Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**3.** In *Texas State Teachers*, dissenting Judge Goldberg argued in favor of the Fifth Circuit's abandonment of the central issue test and its embracing of the significant issue test. Judge Goldberg called upon the Supreme Court to grant *certiorari* and resolve the split in the circuits.

Jan.1981) (*en banc*) (prisoner class was a prevailing party since it succeeded on constitutional challenges to conditions of confinement and obtained injunctive relief, although individual class members were denied claims for compensatory and punitive damages), *overruled on other grounds, International Woodworkers v. Champion Intern.*, 790 F.2d 1174, 1175 (5th Cir.1986), *aff'd*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

The central issue test was recently applied in *Maloney v. City of Marietta*, 822 F.2d 1023, 1025 (11th Cir.1987) (fees awarded under § 1973*l* (e), under which the same standards apply as under § 1988); *see also Taylor v. City of Fort Lauderdale*, 810 F.2d 1551 (11th Cir.1987) (success on minor or peripheral issue will not support an award of fees); *Solomon v. Gainesville*, 796 F.2d 1464, 1466 (11th Cir.1986); *Watkins v. Mobile Housing Board*, 632 F.2d 565, 567 (5th Cir. Unit B 1980); *Familias Unidas v. Briscoe*, 619 F.2d 391, 405 (5th Cir.1980); *Iranian Students Association v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979).

In *Williams v. City of Fairburn, Ga.*, 702 F.2d 973, 976 (11th Cir.1983), the district court had held that the plaintiff had "only prevailed on a small portion of the allegations and issues presented," but the appellate court reversed, because the plaintiff prevailed on the "primary and ultimate issue presented." The court there explained that

> one does not have to succeed on all claims in order to obtain attorney's fees. [*Jones v. Diamond*, 636 F.2d at 1382]; *Robinson v. Kimbrogh*, 620 F.2d 468, 478 (5th Cir.1980). In those instances *where one is unsuccessful on a subsidiary issue*, we must determine that issue's relationship to the primary issue as well as the objective of the lawsuit. *Jones*, 636 F.2d at 1382.

*Williams*, 702 F.2d at 976 (emphasis added). A party need not succeed on all issues or claims. Failure on subsidiary issues will only affect the amount of the award. But one must win on the central issue.

For example, In *Miami Herald Publishing Co. v. City of Hallandale*, 742 F.2d 590 (11th Cir.1984), the newspaper challenged a comprehensive city licensing tax ordinance. The central issue in that case was the Miami Herald's claim that it was unconstitutional to tax its publication under the first amendment. The district court ultimately ruled in the Miami Herald's favor only on one non-tax-related provision. The Eleventh Circuit concluded that, having suffered an adverse judgment on the central issue, the Miami Herald was not the prevailing party.

Similarly, in *Wilson v. Attaway*, 757 F.2d 1227 (11th Cir.1985), the central issue was the constitutionality of an arrest by a county sheriff. The plaintiffs were successful in challenging the constitutionality of the city charter, but the charter's constitutionality was not relevant to the central issue, the constitutionality of the arrest. Thus, the *Wilson* court held that the plaintiffs were not the prevailing parties.

2. The Significant Issue Test in the Eleventh Circuit.

In other cases, the Eleventh Circuit has applied the significant issue test. In most of these cases, the court has relied upon the following language from the Supreme Court case, *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. [footnote omitted]. The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (CA1 1978). [Footnote No. 8]. This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable."

*Id.* at 433, 103 S.Ct. at 1939. In Footnote No. 8, the Court cited cases in which the Ninth and Seventh Circuits applied the sig-

nificant issue test, and ended with: *"Cf. Taylor v. Sterrett,* 640 F.2d 663, 669 (CA5 1981) ('[T]he proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought')." *See id.* at 433 n. 8, 103 S.Ct. at 1939 n. 8.

This District Court's reading of the *Hensley* passage quoted above is merely that the Supreme Court approved the formulation of the test adopted in the circuit from which the case arose, and noted that other circuits apply a different formulation of the test. It did not mandate universal application of the significant issue test and abandonment of central issue test, and thereby implicitly overrule the standing precedent in the Fifth and Eleventh Circuits. The issue before the Court in *Hensley* was not the appropriateness of the significant issue test *vis a vis* the central issue test. The Court has granted *certiorari* on that issue in *Texas State Teachers.* The issue in *Hensley* was "whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims." *See id.* at 426, 103 S.Ct. at 1935.

This Court's reading of the passage follows that of the panel in *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551 (11th Cir. 1987):

This Circuit follows the "central issue" test for determining and awarding attorney's fees. In order to qualify as a prevailing party under 42 U.S.C. § 1988, the plaintiff must be successful on the central issue in the case, exhibited by the fact that the plaintiff acquired the primary relief sought.

.     .     .     .     .     .

[In *Hensley,*] the Supreme Court focused primarily on the standards to be used in assessing the *amount* of the prevailing party's award of attorney's fees. The award of fees, however, comes after a determination that a party has "prevailed," either on "any significant issue" or the "central issue" in the litigation, depending on the Circuit.

*Id.* at 1555–56 (emphasis in original, citations omitted).[4]

In a number of cases, however, the Eleventh Circuit cites *Hensley* for the proposition that the standard to be applied in determining the prevailing party is whether the plaintiff has succeeded on any significant issue. In *Avila v. Coca-Cola Co.,* 849 F.2d 511, 514 n. 3 (11th Cir.1988), the plaintiff lost on his employment discrimination claim and prevailed on a retaliation claim. In concluding that Avila was a prevailing party the court quoted *Hensley:* " '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.')." *Id.* at 514 n. 3.

Similar is *Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 n. 3 (11th Cir.1987), *pet. for cert. filed,* (Nov. 19, 1987). There the plaintiff lost on at least eight claims against the City of Kennesaw, and lost on seven of eight claims against individual police officers. *See id.* at 1574. On the one successful claim, the district court awarded attorney's fees. On appeal, the court affirmed the award, quoting the same sentence from *Hensley* quoted in *Avila. See id.* at 1578 n. 3. Other cases where the court has relied upon *Hensley* or otherwise applied the significant issue test include the following: *Afro-American Patrolmen's League v. Atlanta,* 817 F.2d 719,

---

4. In *Texas State Teachers,* the Fifth Circuit states: "In *Hensley,* the Supreme Court merely accepted the "generous formulation" of the "prevailing party" definition found in some of the circuits but did not hold it to be the only correct definition." *Texas State Teachers,* 837 F.2d at 192.

In another case, *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court resolved whether a petitioner could obtain an interlocutory award of attorney's fees. In that case the Court stated that to be a prevailing party, a party must "establish his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Id.* at 757, 100 S.Ct. at 1989. Read in the context of an interlocutory award, this language would not mandate general application of the significant issue test. The court in *Taylor,* for example, quotes this language and applies the central issue test. *See Taylor,* 810 F.2d at 1556.

725 (11th Cir.1987); *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539–40 (11th Cir.1987); *U.S. v. 640,000 Acres of Land in Dade County, Fla.*, 756 F.2d 842, 848 (11th Cir.1985) (the court stated the significant issue test, relying on *Hensley*, but also noted that the plaintiff won relief on the only issue presented); *B & J Music Inc. v. McAuliffe*, 719 F.2d 1536, 1539 (11th Cir. 1983) (fees denied where plaintiffs did not "achieve significant relief to which [they were] entitled under the civil rights laws," and did not "vindicate *a* civil right at issue in the litigation," *citing Doe v. Busbee*, 684 F.2d 1375, 1381 (11th Cir.1982), (emphasis added).

### 3. The Standard For This Case.

■ This Court has read carefully the cases cited above, among others, and has found no basis upon which to reconcile the application of the divergent standards. As was the court in *Taylor*, this Court is persuaded that *Hensley* did not overrule the central issue test applied in this circuit. Moreover, the panel decisions which appear to employ the significant issue test could not overrule prior cases employing the central issue test, *see Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir. Unit B, October 13, 1981) (stating firm rule of the circuit that one panel cannot disregard the precedent set by a prior panel), and of course could not overrule the *en banc* cases, *Martin* and *Jones*. Thus this Court shall apply the central issue test to the instant case.

### IV. Application to Carey and the Fifth Circuit Exception

■ In this case, whether the central issue test or the significant issue test is applied determines whether Plaintiff Carey is awarded attorney's fees. Clearly, the verbal assault claim was a significant issue in this litigation; however, just as clearly it was not the central issue. The great majority of the discovery, pre-trial motions and briefs, the evidence and argument presented at trial, and the amount of requested damages all centered on the Cedartown Klan demonstration attack and the alleged following cover-up conspiracy. The verbal assault claim was a significant claim, one which vindicated one of Carey's civil rights, but it was not the central issue of the litigation.

Carey argues in his Motion to Reconsider, however, that his successful verbal assault claim may support an award of attorney's fees because it was a separate, independent claim, made in his Supplemental Complaint. He argues that parallel to the Eleventh Circuit case law on the central issue test, runs case law to the effect that fees may be awarded where success has been on a separate, independent *claim*, as opposed to a separate *issue*. In other words, he contends that the central issue test should be applied to each separate claim independently of the other claims.

As discussed *infra*, this is the law in the Fifth Circuit. Carey, however, has cited no case, and none has been found, where the Eleventh Circuit applied the central issue test independently to distinct, unrelated claims. A careful reading of the cases cited by Carey for this proposition shows that they lend him no support. In *Avila*, as explained *supra*, the court applied the significant issue test. *Garner* could be read to support Carey's proposition, but the court there made no distinction between "issues of the litigation" and "claims." [5] The court found Garner to have prevailed on one "issue" and to have lost on another. The court held Garner to be a prevailing party but did not specify which of the two tests it was employing. *Garner*, 807 F.2d at 1539–40. Its approval of fees can best be read as resulting from application of the significant issue test, since it speaks in terms of issues and not in terms of separate "claims." The other Eleventh Circuit case cited by Carey, *Goodson v. City of Atlanta*, 763 F.2d 1381, 1389–90 (11th Cir. 1985), does not address the issue.

In any event, even were this principle the law of this circuit, an examination of this "exception" to the general application of the central issue test, as it is applied in the

---

**5.** This Court finds no such distinction between "issues of the litigation" and "claims" made in any of the Eleventh Circuit cases that employ either of the prevailing party tests.

Fifth Circuit, reveals that it is of no avail to Carey.

The Fifth Circuit, in granting a petition for rehearing, softened the harshness of the central issue test by holding that the court may apply it separately to distinct, unrelated claims in the litigation. See *Uviedo v. Steves Sash & Door Co.*, 753 F.2d 369, 370–73 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 791, 88 L.Ed. 2d 769 (1986). There the court explained that in its original opinion, 738 F.2d 1425, 1433 (5th Cir.1984), it had held the following

> "[U]nder *Commonwealth Oil [Refining Co., Inc. v. EEOC*, 720 F.2d 1383 (5th Cir.1983) ] [a Fifth Circuit "central issue" case], a greater measure of success in the *context of the suit as a whole* is necessary than that achieved by plaintiff here" (emphasis added), and that although Mrs. Uviedo prevailed in some claims, she did not prevail "in most of them, or in the most important of them, or in any that could fairly be described, singly or collectively, as the central issue in this case.... [U]nder the law of this circuit, she was not '*the* prevailing party' in this lawsuit....' *Uviedo*, 738 F.2d at 1433.

*Uviedo*, 753 F.2d at 370 (emphasis, brackets in original).

The court held that it had

> neglected to consider application of the doctrine that a plaintiff's claims which are unrelated to each other, though ... properly joined in a single suit ... are nevertheless to be considered for attorneys' fees purposes as if each were brought in a separate suit, so that a party's success or failure on one claim is not to be considered in determining that party's entitlement (or vulnerability) to attorneys' fees on an unrelated claim.

*Id.* at 370–71.

The court relied upon language from *Hensley* that "unrelated claims be treated as if they had been raised in separate law-

suits, and therefore no fee may be awarded for services on the unsuccessful claim." See *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. This language of *Hensley*, however, was presented by the Supreme Court in its discourse on how to determine the *amount* of fees *after* the party has been determined to be the prevailing party. It was not announced as a way to apply the central issue test in identifying the prevailing party.

Even so, this Court would be disposed to take this pragmatic approach to the instant case, but it cannot do so because Carey's verbal assault claim was not a distinct claim unrelated to the unsuccessful claims of the litigation. The Eleventh Circuit in *Popham* explained that federal courts expansively treat claims as being related. See *Popham*, 820 F.2d at 1579, *and cases cited therein, e.g., Goodson v. City of Atlanta*, 763 F.2d 1381, 1389–90 (11th Cir. 1985) (false arrest and imprisonment claim related to claim challenging prison conditions). The Supreme Court noted in *Hensley* that claims may be considered related when they involve a common core of facts or are based upon related legal theories. See *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.[6]

Here, the claims clearly are related. The verbal assault claim and the physical attack and conspiracy claims all arose from the same core of facts involving the incident at the Klan's Cedartown demonstration. The claims also were based upon related legal theories: all were brought under the Civil War statutes and Georgia tort law. All the federal claims, for example, required proof of racial animus; thus, all called for the evidence of Smith's racial beliefs, his participation in the Klan generally, and in the demonstration specifically. While the successful verbal assault claim was brought in a supplemental complaint, it was "related" to the unsuccessful claims of the Complaint, given the construction of that term

---

**6.** While this definition is also given in the Court's discourse on how to determine the amount of fees, the definition is appropriate in this instance. It would be illogical to treat the claims as related when identifying the prevailing party but as unrelated when determining the amount of fees.

by the courts. The Fifth Circuit's "exception" therefore is inapplicable to this case.

### V. Conclusion

The Court is cognizant of the harshness of applying the central issue test in this case. Nevertheless, the Court is convinced that it remains the law of this circuit. Since Carey failed to succeed on the central issue of the litigation and failed to obtain substantially the relief requested, he was not the prevailing party. He is not entitled to an award of attorney's fees.[7]

ACCORDINGLY, for the foregoing reasons, Plaintiff Carey's Motion for Reconsideration of the denial of his petition for attorney's fees is DENIED.

IT IS SO ORDERED.

---

**7.** Were this Court writing on a clean slate, it would employ the significant issue test. The Court is personally persuaded that the legislative history would provide for this result. *See Texas State Teachers,* 837 F.2d at 193–97 (Goldberg, *J.,* dissenting); *Ross v. Double Diamond, Inc.,* 672 F.Supp. 261, 278 n. 9 (S.D.Tex. 1987). The Supreme Court in *Texas State Teachers* may resolve the split in the circuits.