Timothy **CAREY**, Plaintiff,

v.

James William **RUDESEAL**, Marion Franklin Shirley, Jr., and Randall Wiley Smith, Defendants.

Civ. A. No. 4:85–cv–358–HLM.

United States District Court, N.D. Georgia, Rome Division.

Aug. 29, 1989.

George Brian Spears, Office of George Brian Spears and Kathleen L. Wilde, American Civil Liberties Union, Southern Regional Office, Atlanta, Ga., for Timothy Carey.

James William Rudeseal, Cedartown, Ga., pro se.

Jeffrey Ross Sliz, Office of Jeffrey Ross Sliz, Lawrenceville, Ga., for Marion Franklin Shirley, Jr. and Randall Wiley Smith.

## ORDER

HAROLD L. MURPHY, District Judge.

The Court's attention is once again focused on Plaintiff Carey's motion for attorney's fees under 42 U.S.C. § 1988.[1] In an Order dated June 22, 1989, the Court granted the Plaintiff's Rule 60(b) motion for relief from its judgment of August 12, 1988, wherein the Court denied Plaintiff's request for attorney's fees. The Court rested its August 12 Order on the principle that Carey did not prevail upon the "central issue" in the case and thus was not the "prevailing party" for purposes of an award of attorney's fees under Section 1988.[2] The Eleventh Circuit rule at the

---

1. 42 U.S.C. § 1988 provides in part:

   In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985 and 1986 of this title, Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. Timothy Carey initially filed this civil rights action alleging that the defendants conspired to violate his rights protected by 42 U.S.C. §§ 1981, 1985(2), 1986, and Georgia tort law. The allegations of the Complaint were that on April 7, 1984, members of the Cedartown, Georgia Klavern of the Southern Knights of the Ku Klux Klan, met to pass out literature and solicit donations.

   Carey alleges that while riding his bicycle past the gathering of Klansmen, racial slurs were shouted at him. When he dismounted to "shoo away" a dog, Defendant Smith struck him repeatedly with a set of brass knuckles and sprayed mace into his face. Plaintiff alleged that thereafter, Defendants Rudeseal and Shirley entered into a conspiracy to hide Defendant Smith and prevent Carey from learning his identity. Smith subsequently

time the August 12 Order was rendered required a plaintiff to prevail on the central issue of the suit or receive substantially the relief requested. Only then would entitlement to a Section 1988 award of attorney's fees vest. *See e.g., Taylor v. City of Fort Lauderdale,* 810 F.2d 1551 (11th Cir. 1987); *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985) (en banc).

The Supreme Court in *Texas State Teachers Assn. v. Garland Indep. School Dist.,* 489 U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), specifically disavowed the "central issue" test utilized by this Circuit to determine prevailing party status. The net effect of the *Texas State Teachers* decision is to bring the Eleventh Circuit into line with the majority of courts throughout the country by making the application of the "significant issue" test the touchstone for establishing prevailing party status. *See generally, Gingras v. Lloyd,* 740 F.2d 210, 212 (2d Cir.1984); *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 911 (3d Cir. 1985); *Miller v. Solem,* 728 F.2d 1020, 1032–33 (8th Cir.1984) (en banc); *Lummi Indian Tribe v. Oltman,* 720 F.2d 1124, 1125 (9th Cir.1983); *Nephew v. City of Aurora,* 766 F.2d 1464, 1466 (10th Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 1269, 99 L.Ed.2d 481 (1988).

The "significant issue" standard has been generously interpreted to confer prevailing party status on the plaintiff who wins only a portion of the legal claims asserted. A plaintiff need not have won a judgment on all of the claims in the litigation in order to be a prevailing party within the meaning of Section 1988. If there is success on any significant issue in the litigation which achieves some of the benefits sought in bringing the suit, it may be said that the plaintiff is the prevailing party. *Hensley v. Eckerhart,* 461 U.S. 424, 433,

103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978) (footnote omitted). The core determinate for establishing "prevailing party" status is that the plaintiff achieve some vindication of his or her rights as a result of the lawsuit.

This Court, on a motion for reconsideration of its August 12, 1988, Order determined that Carey satisfied the significant issue test and that had the law allowed recovery under such a test he would have prevailed on his fee petition. *Carey v. Rudeseal et. al.,* 703 F.Supp. 929, 931 (N.D. Ga.1988). This is so because the verbal assault claim on which Carey succeeded was a significant issue of the litigation. *Id.* It follows then, that under the holding of *Texas State Teachers,* Carey is a prevailing party for purposes of a Section 1988 fee award. The Court must now determine the appropriate amount of the award.

In *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court established the framework and methodology for the calculation of the amount of a reasonable attorney's fee to be awarded to the "prevailing party" under Section 1988. The starting point for this calculation is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate for the attorney's services. The product of reasonable hours times a reasonable rate is commonly termed the "lodestar." The lodestar is subject to an upward adjustment in some circumstances. The most significant consideration in adjusting the lodestar is the special circumstances or results reached in the particular case. The product of reasonably expended hours times reasonable rates, appropriately adjusted, yields a "rea-

---

pled guilty to a charge of simple battery against Carey in the Superior Court of Polk County, Georgia.

In a Supplemental Complaint in this case, Carey alleged that after the sentencing hearing of Defendant Smith, Smith verbally assaulted Carey in the Polk County Courtroom.

At the close of the trial in the instant case, Carey suggested to the jury an award of over

$110,000.00 in compensatory and punitive damages against the three defendants was justified. The jury disagreed. Instead, the jury returned a verdict in favor of the defendants on all counts of the Complaint. The jury found in favor of Carey, however, on the verbal assault claim based upon the Section 1981 allegation in the Supplemental Complaint. The jury awarded Carey $1,000.00.

sonable attorney's fee" under section 1988. *See also, Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir.1988)

In this case Plaintiff's attorney Brian Spears requests $33,022.50 for attorney's fees. In making this request he summarizes his efforts as follows:

a. Total Hours Expended: 188.7

b. Reasonable Hourly Rate: $150.00 per hour

c. Enhancement Factor: ⅙th, or $25.00 an hour

This Court must now determine the reasonableness of the fees requested by Plaintiff's counsel.

### Hours Reasonably Expended

■ In *Hensley*, 461 U.S. at 433, 437, 103 S.Ct. at 1941, the Supreme Court noted that a Section 1988 fee applicant bears the burden of documenting and submitting evidence to support the hours expended in the litigation. The applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437, 103 S.Ct. at 1941. This is especially important when the plaintiff has only partly succeeded in the suit. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1137 (11th Cir.1984). In such situations the court should consider the extent of the plaintiff's success in determining whether hours were reasonably expended. *Id.*

If the plaintiff achieves limited satisfaction, the district court should approve only that amount of time that is reasonable in relation to the result obtained. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940; *Norman*, 836 F.2d at 1302. Yet, the court should not disallow hours that are related and necessary to the successful claim but which also encompass time spent on unsuccessful aspects of the litigation. *Carmi-*

*chael*, 738 F.2d at 1137. The most obvious example would be trial time where the plaintiff did not get a favorable verdict on all issues raised. To be sure, however, *Hensley* teaches that "excessive, redundant or otherwise unnecessary" hours not associated with a successful claim should be either excluded from the hours for which compensation is sought, or in appropriate circumstances reduced. *Hensley*, 461 U.S. at 434, 436–37, 103 S.Ct. at 1939–1940, 1941. In other words, the fee applicant must exercise "billing judgment" in submitting his or her hours to the court. *Id.* at 437, 103 S.Ct. at 1941.

Under the rubric of "billing judgment," all hours spent in trial or in preparing a pretrial order in a case in which success is measured in less than complete vindication, may not be the sort of hours that should be fully compensated under Section 1988.

If the district court determines that the number of hours claimed are excessive, it must explain which hours are disallowed and why an award of fees for those hours would be improper. The explanation must be made with sufficient clarity so that the appellate court can make an informed review of the award. *N.A.A.C.P. v. City of Evergreen, Alabama*, 812 F.2d 1332, 1335 (11th Cir.1987); *Johnson v. University College*, 706 F.2d 1205, 1207–08 (11th Cir. 1983), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684. Since this Court is convinced that the hours proffered in the fee petition are excessive in light of the results obtained, the Court turns its attention to an explanation of its decision to reduced the hours sought.

Fee Petitioner Spears, in his affidavit accompanying the brief in support attorney's fees, calculates the hours expended on behalf of Plaintiff Carey to be 188.7.[3] Of this number 17.8 hours were devoted to the preparation of a pretrial order, and trial related activities consumed another 113.6

---

**3.** The 188.7 hours for which Attorney Spears seeks compensation do not include hours which were spent on issues not clearly related to recovery from Defendant Smith for the verbal assault claim. For example, the requested hours do not reflect time spent deposing defendants Shirley and Rudeseal, nor is compensation sought for time expended defeating the defendants' motion for summary judgment. In short, the requested time does not reflect hours spent solely on the claims lodged against the other defendants. *See generally,* Spears Affidavit, March 17, 1988, and his letter to the Court dated July 6, 1988.

hours. The total of these two blocks of time equal 131.4 hours.

Clearly, many of the 131.4 hours were devoted to claims on which the Plaintiff did not ultimately prevail.[4] Section 1988 jurisprudence requires the Court not to compensate for hours expended on allegations which do not succeed. Yet, the law also mandates that hours necessary to the successful adjudication of certain claims not be dismissed out of hand because they contain time spent on unsuccessful aspects of the same litigation. Therefore, the Court adopts the following as its determination of the hours reasonably expended in this case.

Of the 131.4 hours of time devoted to the preparation of the pretrial order and trial activities, the Court will allow 65.7 or one-half of said hours to be counted towards the total number of hours for which compensation is requested. The reduction by one-half of the 131.4 hours is warranted given the requirements of Section 1988 that unsuccessful claims not be compensated, and that hours reasonably associated with successful claims, which also include time spent on denied claims, not be completely eliminated. The 65.7 hours is consistent with this requirement. Thus, this brings the total number of hours for which compensation is sought to 123. The Court finds 123 hours to be a reasonable total of the hours expended in this case given the level of success achieved by the Plaintiff.

Having calculated the number of hours reasonably expended, the Court must now determine the hourly rate at which to compensate the work of attorney Spears.

### Reasonable Hourly Rate

■ The Supreme Court in *Blum v. Stenson* ruled that a reasonable hourly rate for purposes of Section 1988 is to be measured by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895, 104 S.Ct. at 1547. "Prevailing market rates," deemed to be reasonable under Section 1988, are rates that are consistent with those charged by lawyers of similar skill, experience, and reputation working in the relevant community. *Id.* & n. 11.

As with the reasonable hours claimed, the fee applicant bears the burden of establishing the reasonableness of the hourly rate requested. *Norman*, 836 F.2d at 1299, *citing, City of Evergreen*, 812 F.2d at 1338. Specifically, the fee applicant is required to produce satisfactory evidence that the requested rate is in line with those prevailing in the community.[5] *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. At a minimum, satisfactory evidence is "more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. It should include direct evidence of charges by lawyers, other than the fee petitioner, who operate under similar circumstances and with similar experience as the petitioner. *Id., see also, Lynch v. City of Milwaukee*, 747 F.2d 423, 428 n. 4 (7th Cir.1984); *Garrity v. Sununu*, 752 F.2d 727, 740 n. 12 (1st Cir.1984).

The Eleventh Circuit has indicated that some of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), may still have utility in establishing the hourly rate at which a prevailing attorney should be compensated. *Norman*, 836 F.2d at 1299.[6] This is particularly true where there is an issue as to the appropriate rate. It should be noted that the district court need not consider the factors at all, but *may* consider those it deems relevant to determining a reasonable hourly rate. With this caveat in mind the twelve factors are:

(1) The time and labor required;

(2) the novelty and difficulty of the question;

(3) the skill requisite to perform the legal services properly;

---

4. See *supra,* note 2.

5. The "relevant community" for purposes of this fee petition is the Northern District of Georgia.

6. The Supreme Court recently declared that the "lodestar" presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980) and adopted in *Johnson v. Georgia Highway Express, Inc., supra. See, Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 562 n. 7, 563–65, 106 S.Ct. 3088, 3097 n. 7, 3097–98, 92 L.Ed.2d 439 (1986).

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or circumstances;

(8) the amount involved and the result obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

Of course, the district court in fixing hourly rates that are consistent with the prevailing community will draw on its own experience and knowledge of prevailing market rates. *Norman*, 836 F.2d at 1301. *See also, Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941 (district court has discretion in determining amount of fee award because of its superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially is a factual matter.)

In the instant case attorney Spears seeks a fee of $150.00 an hour. In support of this fee he has filed his own affidavit and the affidavits of two other attorneys. Mr. Spears' affidavit indicates that he bills his regular fee-paying clients $150.00 for federal litigation. In support of his proposed $150.00 fee, attorney Spears offers the affidavits of two Atlanta area attorneys. One is a partner in the firm of Fisher & Phillips, the other a partner in the firm of Arnall, Golden & Gregory. Reliance upon the affidavits of the two Atlanta lawyers may not be altogether apposite.

Both of the Atlanta attorneys practice primarily in the areas of corporate and defense law. Mr. Spears, on the other hand, indicates that a substantial amount of his work in done in the civil rights arena. Unfortunately, advocates for the civil rights of minorities and women are not paid at the higher rates which corporate attorneys can command. The Court is nonetheless mindful of the need to compensate attorneys who practice civil rights law at a rate sufficiently high enough to attract competent counsel to champion the rights of the marginalized. However, this Court must set a fee which is reasonable within the relevant prevailing market. Accordingly, it is determined that a fee of $125.00 is a reasonable hourly rate at which to compensate Mr. Spears for his services on behalf of Plaintiff Carey.

The reduction by twenty-five dollars is reasonable in light of the success achieved by the Plaintiff in the case. Moreover, application of the *Johnson* factor concerning the novelty and difficulty of the issue tried, sustains a reduction of the overall requested fee from $150.00 to $125.00. The issues in this case were relatively straight forward and did not necessitate any particular expertise in an emerging area of the law. Therefore the Court is satisfied that the $125.00 hourly rate is reasonable.

Having determined a reasonable hourly rate, and established the number of hours reasonably expended on this matter, the court is ready to calculate the "lodestar." The lodestar, as previously indicated, is the product of reasonable hours times a reasonable rate. This Court has set the reasonable fee at $125.00 an hour, and the reasonable hours spent on this matter at 123. The resulting calculation reveals a "lodestar" amount of $15,375.00. Mr. Spears has requested that the Court enhance the fee by a factor of 18% thereby adjusting the lodestar $2,767.00, to bringing the total fee request to $18,142.00.

### Adjustment of the Lodestar

In *Blum v. Stenson*, the Supreme Court made it clear that there were some circumstances where an upward adjustment to the lodestar figure is appropriate in order to produce the "reasonable" attorney's fee envisioned by Section 1988. *Blum*, 465 U.S. at 898, 104 S.Ct. at 1548–1549. The burden of proving the need for an upward adjustment is with the fee petitioner. *Id.* The court noted that an upward adjustment might be justified "in the rare case where the fee applicant offers

specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rate charged and that the success was 'exceptional'". *Id.* at 899, 104 S.Ct. at 1549.

The Court in *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) reaffirmed its ruling in *Blum* that enhancement of the lodestar was justified only in "rare" cases and only on a specific evidentiary showing. The Court indicated however, that there is a "strong presumption" that the lodestar figure represents a reasonable attorney's fee, and that no statutory purpose is served by granting an upward adjustment to it. *Id.* 478 U.S. at 565, 106 S.Ct. at 3098.[7] The *Delaware Valley* Court indicated that in order to obtain an upward adjustment of the lodestar, the fee applicant was required to present specific evidence that the results obtained were outstanding and that the lodestar figure was far below awards made in similar cases where the court found equally superior quality of performance. *Id.* at 565-68, 106 S.Ct. at 3098-3100.

It must be noted that the *Blum* Court ruled that factors which are initially a substantive part of the lodestar calculation are not appropriate bases for upward adjustment. In making this argument the Court cites approvingly *Johnson v. Georgia Highway Express, supra.* In so doing the Court gives the clear indication that the *Johnson* factors are already subsumed within the general determination of the lodestar. *Blum,* 465 U.S. at 900, 104 S.Ct. at 1549-1550. Thus issues such as the novelty and complexity of the suit, the special skills and experience of counsel, and the result obtained through litigation, unless outstanding, are not appropriate standards on which to justify an upward enhancement of the lodestar.

In the instant case the fee petitioner has not meet the heavy burden imposed upon

him by the *Delaware Valley* ruling. There is certainly no indication of superior performance, and neither was the result obtained "outstanding." In *Norman,* the Eleventh Circuit defined outstanding as "results that are out of the ordinary, unusual or rare." *Norman,* 836 F.2d at 1302; *accord Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987). In short, an outcome which is expected in the context of extant substantive law will not ordinarily qualify as outstanding. There is nothing in this case which warrants an enhancement of the lodestar. Plaintiff Carey's recovery was minimal, and the legal theory on which it was based did not involve exceptional legal ability to develop. Therefore enhancement is not warranted.

ACCORDINGLY, the motion for attorney's fees is GRANTED in the amount of $15,375.00.

IT IS SO ORDERED, this the 29th day of August, 1989.

---

**7.** Writing in dissent Justice Blackmun noted that the majority in *Delaware Valley,* has heightened the standard for adjustment "to the point

where it may be virtually impossible for the plaintiff to meet." *Delaware Valley,* 478 U.S. at 569, 106 S.Ct. at 3100 (Blackmun, J., dissenting).